## INDEX OF DOCUMENTS

| Tab | Reference No. | Description |
|-----|---------------|-------------|
| 1 | – | Petition to Vacate or Modify Partial Final Arbitration Award |
| 2 | – | Notice of Petition to Vacate or Modify Partial Final Award |
| 3 | Exhibit 1 | Statement of Claim |
| 4 | Exhibit 2 | Procedural Order No. 1 |
| 5 | Exhibit 3 | David Sharpe |
| 6 | Exhibit 4 | Series A Agreement |
| 7 | Exhibit 5 | Answer and Counterclaim |
| 8 | Exhibit 6 | Email from April 26, 2021 |
| 9 | Exhibit 7 | Email from May 7, 2021 |
| 10 | Exhibit 8 | Rule 33 Motion to Dismiss |
| 11 | Exhibit 9 | Opposition to Rule 33 Motion |
| 12 | Exhibit 10 | Reply in Support of Rule 33 Motion |
| 13 | Exhibit 11 | Partial Final Award |
| 14 | Exhibit 12 | Letter Motion to Vacate |
| 15 | Exhibit 13 | Opposition to Letter Motion to Vacate |
| 16 | Exhibit 14 | Reply Letter Motion to Vacate |
| 17 | Exhibit 15 | Procedural Order No. 2 |
| 18 | – | Request for Judicial Intervention |
| 19 | – | Request for Judicial Intervention Addendum |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the matter of:

ADULT USE HOLDINGS INC. and
ZOLA VENTURES LTD.,

                                   Petitioners,

                   -against-

FAZE CLAN INC.,

                                   Respondent.

Index No.

**PETITION TO VACATE OR
MODIFY PARTIAL FINAL
ARBITRATION AWARD**

1.   Petitioners Adult Use Holdings, Inc. and Zola Ventures Ltd. (collectively, "Petitioners"), by and through their undersigned attorneys, submit this petition under CPLR § 7511(b) and Federal Arbitration Act §§ 9 and 10 to (1) vacate the Partial Final Award, dated August 4, 2021 (the "PFA"), in the matter before the American Arbitration Association captioned *Adult Use Holdings, Inc. and Zola Ventures Ltd. vs. Faze Clan, Inc.*, Case No. 01-20-0015-8611 (the "Arbitration"); and (2) to remand to the Arbitration for further proceedings consistent therewith, as set forth below.

## II.    INTRODUCTION

2.   Petitioners are foreign finders, based in Canada, who introduced the prior management of Respondent Faze Clan, Inc. ("Respondent") to capital sources in Canada that funded Respondent with over $30 million in early-stage capital, helping propel it to a current valuation of over $1 billion. Prior management of Respondent agreed to compensate Claimants for their successful introductions, and in fact compensated them for one or more initial rounds of

1

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

financing. However, when a source referred by Claimants agreed to loan Respondent $30 million CAD, new management of Respondent repudiated the agreement, and refused to pay Claimants the compensation to which they expressly agreed.

3.    When Claimants commenced an arbitration of their claims in the American Arbitration Association, Respondent predictably contended that—although Claimants were pure foreign finders, who never negotiated with any potential investor—Claimants were barred from receiving transaction-based compensation because they are not registered brokers or dealers in the United States.

4.    To dispose of this argument at the outset, the parties and arbitrator agreed that Respondent could make a preliminary motion, under Rule 33 of the Commercial Arbitration Rules of the AAA, to dismiss Claimant's claims exclusively on regulatory grounds, under federal and state securities laws.

5.    Respondent made such a Rule 33 motion and Claimants opposed the motion. Ultimately, the arbitrator declined to rule on any of the regulatory arguments authorized by the parties. Instead, contrary to the expectations and understanding of the parties, and without any warning, the arbitrator found—prior to any discovery—that Respondent effectively was entitled to summary judgment on Claimants' claims based on contractual grounds expressly ***not*** submitted for adjudication on the Rule 33 motion.

6.    Although Claimants timely requested that the arbitrator vacate the purported Partial Final Award ("PFA"), the arbitrator found that he was barred from doing so under Commercial Rule 50, which codifies the *functus offico* doctrine. Under that doctrine, once a final award has been entered by an arbitrator, the arbitrator has no power to entertain any request to reconsider or modify the award. This was the sole basis of the arbitrator's decision.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

7.      Under the recent decision of the Court of Appeals of New York in *Am. Int'l Specialty Lines Ins. Co. v. Allied Cap. Corp.,* 35 N.Y.3d 64, 71, 149 N.E.3d 33, 37 (2020), where, as here, the parties expressly have not submitted an issue for summary adjudication by an arbitrator, the *functus officio* doctrine does not apply, and the arbitrator is not barred from reconsidering a decision.

8.      This Court now should vacate the PFA because, in dismissing Claimants' claims on grounds beyond the agreed scope of the Rule 33 Motion, the arbitrator "exceeded his power" in violation of CPLR § 7511(b)(3).

9.      The Court further should vacate the PFA under CPLR § 7511(b)(4) on grounds that it was the result of an unfair procedure which denied Claimants a fair opportunity to present their evidence and argument, without prior warning.

10.    Alternatively, the Court should modify the PFA under § 7511(c)(2).

11.    At this stage, the PFA may easily be corrected without affecting the merits of the Arbitration going forward. The Court may simply remand the matter back to the arbitrator with instructions to allow discovery and adjudicate all matters—after a hearing—in a complete final award coextensive with all of the issues submitted by the parties.

### III.    STATEMENT OF FACTS

### A.    Respondent's New Management Repudiates the Parties' Commission Agreements

12.    Adult and Zola each are a foreign business entities, organized, respectively, under the laws of Canada and of the British Virgin Islands. *See* Exhibit 1, Statement of Claim ("SOC") ¶¶ 8-9. Salman and Gimelshtein each are citizens of Canada, not resident in the United States. *See* Exhibit 2, Procedural Order No. 1 ¶¶ 4-5.

1.      *The Adult Use Commission Agreement*

3

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

3 of 20

13.     On or about, January 29, 2019, Adam Salman, the principal of Adult Use, visited the Company's offices in Los Angeles, California with his friend and business associate, an international disc jockey known as "DJ Mike." *See* SOC ¶ 16. While in the Company's offices, Mr. Salman met the Company's former President, Greg Selkoe. *See id.*

14.     Mr. Salman did not visit the Company to propose raising capital, but rather was there purely for social purposes. *See* SOC ¶ 17. Nevertheless, during the brief meeting, Mr. Selkoe proposed to Mr. Salman that, if he introduced the Company to prospective investors, the Company would pay a 5% commission for each successful transaction. *See id.*

15.     Following the meeting, Mr. Selkoe memorialized this promise on behalf of the Company in § 3 of a Referral Agreement with Adult Use (the "Adult Use Commission Agreement"), under which Faze (the "Client") agreed "to pay to the Referrer a referral commission . . . equal to five percent (5%) of the dollar amount of securities purchased by the referred party in connection with the Funding as a direct result of introductions first made by the Referrer." *See* SOC ¶ 18.

16.     Section 5 of the Adult Use Commission Agreement, a common "tail" provision, provides that "[i]n any case where the Client is contacted by one of the Referrer's sources directly after an introduction or referral has taken place, the Referrer will be entitled to their Commission on any transaction executed by the Client with the respective source; provided that (a) such source did not contact Client independently of Referrer's introduction and (b) less than two (2) years has passed since the Effective Date." *See* SOC ¶ 19.

2.     *The Zola Commission Agreement*

17.     In or about March 2019, pursuant to the Adult Use Commission Agreement, Mr. Salman introduced Mr. Selkoe to Igor Gimelshtein, of Zola, who was a former employee of Canaccord, a Canadian financial services company based in Toronto. *See* SOC ¶ 20.

4

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

4 of 20

18. On behalf of the Company, Mr. Selkoe orally agreed that, if Messrs. Salman and Gimelshtein successfully obtained funding for the Company by and through Canaccord, in addition to the commission due to Adult Use, Mr. Gimelshtein's company, Zola, also would receive a commission of 5% of the amount of the capital raised, upon the same terms as the Adult Use Commission Agreement (the "Zola Commission Agreement"). *See* SOC ¶ 21.

### 3. *Messrs. Salman and Gimelshtein Introduce Canaccord to the Company*

19. On or about March 2, 2019, Mr. Gimelshtein advised Michael Kogan—a Managing Director at Canaccord who specializes in gaming and e-sports, with whom Mr. Gimelshtein previously had worked—about the possibility of raising capital for the Company. *See* SOC ¶ 22.

20. In an email dated March 4, 2019, Messrs. Salman and Gimelshtein introduced Mr. Selkoe to Mr. Kogan, to arrange a teleconference to discuss a potential investment in the Series A Round by Canaccord and/or its investors. *See* SOC ¶ 24. Thereafter, in an introductory teleconference, on March 5, 2019 (the "Canaccord Introduction"), Messrs. Salman and Gimelshtein formally introduced Mr. Selkoe and the Company to Mr. Kogan and Canaccord. *See* SOC ¶ 25. Following the introduction, neither Mr. Salman nor Mr. Gimelshtein had any further involvement with the potential transaction, except to pursue and ensure payment of their due commissions.

### 4. *The Company Memorializes the Zola Commission Agreement*

21. Following the Canaccord Introduction, in an email dated March 6, 2019, Mr. Selkoe, on behalf of the Company, stated to Mr. Gimelshtein "I was pleased to hear your group (family offices) plans to take the remaining $4mm of the note in FaZe Clan. Per our discussion we are comfortable paying you 5% commission on money raised to be paid in stock (warrants, whatever is most advantageous for tax purposes) or cash or a combination of both at your election." *See* SOC ¶ 27.

5

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

22. As confirmed by the parties' subsequent conduct, such 5% commission upon investments by and through Canaccord was in addition to the 5% commission payable by the Company to Adult Use. *See* SOC ¶ 28.

### 5. *Canaccord Insists Upon a Right of First Refusal to Lead a Subsequent Transaction*

23. In an email dated March 14, 2019, Mr. Kogan advised Mr. Selkoe that Canaccord wanted to lead an anticipated subsequent much larger financing round. *See* SOC ¶ 30. Specifically, Mr. Kogan requested that the Company give Canaccord a right of first refusal ("ROFR"), which would entitle it to do so if Canaccord was successful in completing the Series A Round. *See id.* In the same email, Mr. Kogan acknowledged that "Adam/Igor . . . did introduce you to our firm and we are very grateful for this." *Id.*

24. Initially, the Company declined to grant Canaccord the proposed right of first refusal. *See* SOC ¶ 31. However, in an email dated March 26, 2019, Mr. Kogan advised the Company's General Counsel, Phil Gordon, that "[t]he whole reason we are doing this is for the ROFR." *See id.* Ultimately, after further negotiation between the Company and Canaccord, on April 6, 2019, the parties entered into a letter agreement granting Canaccord a ROFR to serve as the lead financial advisor in connection with a number of potential transactions, including a financing of over $25 million, upon the condition that Canaccord successfully raise funds and close out the Series A Round. *See* SOC ¶ 32.

### 5. *Canaccord Successfully Closes the First Transaction*

25. Canaccord successfully procured investors sufficient to close out the Series A Round, triggering its rights under the ROFR. *See* SOC ¶ 33. In the "First Transaction," which closed on or about December 24, 2019, Canaccord and its investment partners purchased a total of $5,335,000 in the Series A convertible debt of the Company. *See* SOC ¶ 34. Neither Adult Use nor

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Zola was in any way involved in negotiating the terms of the First Transaction.

26. Consistent with the Company's agreements, in July and August 2019, the Company paid each of Adult and Zola its due 5% commission in connection with the First Transaction. *See* SOC ¶ 35.

### 6. *Canaccord and the Company Secretly Complete a Loan Facility with Bridging Finance, Inc.*

27. Pursuant to the terms of the ROFR, Faze and Canaccord secretly proceeded to negotiate a second, $30,000,000 CAD convertible loan facility (the "BFI Loan" or "Second Transaction"), in partnership with Bridging Finance, Inc. ("BFI"), also of Canada, in connection with which the Company was valued at over $220,000,000. *See* SOC ¶ 37.

28. Recognizing that, under the plain language of § 5 of the Adult Use and Zola Commission Agreements, Adult Use and Zola were entitled to 5% commissions in connection with such a subsequent transaction "executed by the [Company] with the respective source," Canaccord, occurring within two years of the agreements, the Company and Canaccord intentionally concealed the BFI Loan from Messrs. Salman and Gimelshtein, who did not learn of it until it was publicly announced. *See* SOC ¶ 38.

### 7. *The CEO of Bridging Finance, Inc. is and Investment Partner in the First Transaction*

29. Not detailed in Claimant's Statement of Claim is the fact that among the "investment partners" procured in the First Transaction was David Sharpe, the CEO of BFI, *see* Exhibit 3, who purchased 11,134 Series A units for $101,238.36, and received a seat on the Board of Directors of the Company. *See* Exhibit 4, Series A Preferred Stock Purchase Agreement ¶ 4.5 and Exhibit A. In particular, the grant to Mr. Sharpe of a board seat strongly indicates that, at the time of the First Transaction, the Company contemplated a significant role for Mr. Sharpe and BFI in the future. Discovery in this matter may establish that, at the time of the First Transaction, Mr.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)     INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1     Case 1:21-cv-10313-MKV   Document 1-1   Filed 12/03/21   Page 9 of 53    RECEIVED NYSCEF: 11/02/2021

Sharpe and BFI already had begun substantial discussions with Canaccord and the Company concerning the terms of the Second Transaction.

### B. Claimants Commence the Arbitration

30. On November 24, 2020, Claimants commenced arbitration proceedings before the American Arbitration Association, captioned *Adult Use Holdings, Inc. and Zola Ventures Ltd. vs. Faze Clan, Inc.,* Case No. 01-20-0015-8611, to enforce the payment terms of the Adult Use and Zola Commission Agreements in connection with the BFI Transaction. *See* SOC at 10. In its answer and counterclaims, Respondent argued that Claimants are not entitled to receive transaction-based compensation in connection with the introduction of Canaccord, primarily on grounds that neither of Claimants is a broker/dealer registered with FINRA. *See* Exhibit 5. In addition to defending Claimants' claims, Respondent counterclaimed against both Claimants for the return of all compensation which Respondent's prior management had voluntarily paid to Claimants in connection with introductions of potential investors. *See id.*

### C. The Parties Agree that Respondent Will Make a Rule 33 Motion Exclusively on its Regulatory Defenses

31. Prior to the initial teleconference with the Arbitrator, Respondent indicated that it intended to file a motion to dismiss, under Rule 33 of the Commercial Rules solely on grounds that Claimants' claims are barred on regulatory grounds by federal and state securities law (the "Rule 33 Motion"). Consistent with these discussions, in an email dated April 26, 2021, Respondent's counsel wrote the Arbitrator as follows:

> As you may recall, Respondent's answer indicated that Respondent would seek leave to make a dispositive motion under Rule 33. One of Respondent's defenses is that the federal securities laws and state blue sky laws prohibit Respondent from paying unregistered broker-dealers. Claimants' position is that they fall within exemptions to those prohibitions.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

> *The Parties have agreed that the most efficient and economical way to proceed in this arbitration would be for you to resolve that legal question as a preliminary matter, and we have agreed upon the following briefing schedule for doing so:*

- May 14, 2021 – Respondent's Rule 33 Motion to Dismiss

- June 11, 2021 – Claimants' opposition to Respondent's Rule 33 Motion to Dismiss

- June 25, 2021 – Respondent's Reply to Claimants' Opposition

> However, the Parties were unable to agree as to whether any document exchange, to the extent any is necessary, should proceed in parallel to the briefing of the Rule 33 dispositive motion or whether it should wait until after resolution of Respondent's Rule 33 motion.

Exhibit 6 (emphasis added).

32.   Thereafter, during the initial teleconference in the Arbitration, on April 28, 2021, the Arbitrator determined to hear Respondent's Rule 33 Motion, exclusively on their announced regulatory defenses under federal and state securities law, prior to proceeding with discovery.

33.   By email, dated May 7, 2021, counsel to Respondent advised the Arbitrator that the parties had reached an agreement on the law governing the Referral Agreement and the parties' separate Arbitration Agreement. *See* Exhibit 7. Consistent with the parties' understanding concerning the limited nature of the Rule 33 Motion, Respondent stated "[t]o the extent that the Parties' claims or defenses rely on any other instrument or contract, then the Parties will address the law applicable to such instruments or contracts *in any written submissions on the merits if the case should proceed to that stage." Id.* (emphasis added).

34.   Finally, in Procedural Order No. 1 ("PO1"), dated May 12, 2021, the Arbitrator set forth a briefing schedule for the Rule 33 Motion, in which Respondent's opening submission was due on May 14, 2021, Claimant's opposition submission was due on June 11, 2021, and

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Respondent's reply submission was due on June 25, 2021. *See* Exh. 2. PO1 did not authorize any other submission by either Claimants or Respondents. *See id.*

### D. As Agreed, Respondent Makes its Rule 33 Motion on Exclusively on its Regulatory Defenses

35. On May 14, 2021, Respondent filed the opening submission in its Rule 33 Motion. *See* Exhibit 8. In it, consistent with the parties' clear understanding, in its opening submission, Respondent argued exclusively that Claimants are not entitled to receive commissions because they are not registered securities brokers. After prefacing that it also disputed Claimants' arguments on contractual grounds, in paragraph 3 of its memorandum of law, Respondent expressly stated that "[t]he Tribunal need not ever reach those issues, however, because Claimants' claims are subject to dismissal as a matter of law for the reasons set forth in this Rule 33 motion."

*Id.* ¶ 3. Articulating the "reasons set forth in the Rule 33 motion," Respondent continued:

> Both federal securities law and applicable California state securities laws—the latter known as California "Blue Sky" laws—prohibit the payment of transaction-based commissions to unregistered securities brokers, like the Claimants, and those same laws provide that any contracts to pay such unlawful commissions are void and unenforceable. ***Even assuming the facts as pled by Claimants, FaZe Clan is prohibited under applicable securities laws from paying Claimants as requested and any agreement which purports to provide for any such payment is void and unenforceable.***

*Id.* (emphasis added).

36. Respondent thus made crystal clear that, as agreed by the parties and the Arbitrator, its Rule 33 Motion was purely a motion, as a matter of law, based on its regulatory defenses. *See id.* Nowhere in its opening submission did Respondent argue that Claimants are not entitled to fees based upon the language of the Referral Agreement or Zola Agreement. *See id.*

### E. Claimants Oppose Respondent's Regulatory Defenses

37. On June 11, 2021, Claimants filed their submission in opposition to Respondent's

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Rule 33 Motion. *See* Exhibit 9. In it, Claimants appropriately addressed only Respondent's regulatory arguments under federal and state securities law. Claimants had no reason or occasion to address any contractual or other argument by Respondent, which Claimants understood were to be adjudicated—after appropriate discovery—during the arbitration hearing already scheduled in PO1.

### F.   Respondent Presents a New Argument, Beyond the Scope of the Rule 33 Motion, in its Reply Submission

38.   Recognizing the merit of Claimant's response to its regulatory arguments, in its reply submission, Respondent improperly sought to argue factual matters beyond the agreed scope of the Rule 33 Motion, including that—as a matter of fact—Claimant's did not refer the source of the Second Transaction. *See* Exhibit 10. Under traditional principles of practice in state and federal courts—which were no less applicable in the arbitral forum—Respondent was prohibited from introducing any new or different argument in its reply, and the arbitral tribunal should not have considered any argument beyond the scope of Respondent's initial submission.

### G.   The Arbitrator Issues the Purported Partial Final Award, Based Upon the

39.   On August 4, 2021, the Arbitrator issued a decision on the Rule 33 Motion, which he styled a "Partial Final Award" (the "PFA"). *See* Exhibit 11. However, this was contrary to the expectations of the parties, which never agreed—in PO1 or elsewhere—that the Rule 33 Motion would result in a "partial final award."

40.   In the PFA, the Arbitrator expressly declined to grant the Rule 33 Motion on regulatory grounds—the only grounds upon which the parties and arbitrator agreed as bases for the Rule 33 Motion. Instead, contrary to the agreement and expectations of the parties, the Arbitrator found that Claimant's claims should be dismissed outright based upon "the clear language of Paragraph 5" of the Referral Agreement. *See* PFA ¶ 122. The PFA reasoned as follows:

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

> Section 3 of the Referral Agreement requires payment of a 5% commission "of the dollar amount of securities purchased by the referred party in connection with the Funding as a direct result of introductions first made by the Referrer." *Id.* ¶ 120.
>
> While the First Transaction would seem to satisfy these requirements, the Bridging Transaction does not. Canaccord, not Bridging Finance, Inc., is the "referred party" required to make the "purchase" and this language clearly does not extend to the Bridging Transaction." *Id.* ¶ 121.

41.  Had Claimants been on notice that the Arbitrator might decide the Rule 33 Motion other than on regulatory grounds, Claimants could have presented additional facts and argument concerning the meaning of § 5 of the Referral Agreement and Zola Agreement which demonstrate that, at a minimum, there are issues of fact concerning whether Claimants procured BFI as an lender. Specifically, among the "investment partners" procured in the First Transaction was David Sharpe, the CEO of BFI, *see* Exh. 3, who purchased 11,134 Series A units for $101,238.36, and received a seat on the Board of Directors of the Company. *See* Exh. 4, Series A Preferred Stock Purchase Agreement ¶ 4.5 and Exhibit A. In particular, the grant to Mr. Sharpe of a board seat strongly indicates that, at the time of the First Transaction, the Company contemplated a significant role for Mr. Sharpe and BFI in the future.

42.  These facts, and others which Claimants expected to develop in discovery, support the inference that Claimants referred the source of the Second Transaction.

**H.    Claimants Timely Request that the Arbitrator Vacate of Modify the Partial Final Award**

43.  By letter dated August 8, 2021, Claimants requested that the Arbitrator (1) vacate the Partial Award; (2) deny Respondent's Rule 33 Motion to Dismiss; and (3) allow discovery to proceed, among other things, concerning the participation of the CEO of Bridging Finance, Inc. ("BFI"), David Sharpe, in the First Transaction, which confirms that BFI was a funding source subject to the tail in § 5 of the Referral Agreement." Exhibit 12.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

44. In their application, Claimants explained:

> In the Partial Award, you declined to grant the Rule 33 motion on regulatory grounds. Instead, you granted the motion on grounds that Claimants were not entitled to a recovery based upon "the clear language of Paragraph 5" of the Referral Agreement. *See* Partial Award ¶ 122. However, this issue was not within the scope of Respondent's initial motion. Had Claimants been on notice that you might decide the Rule 33 motion other than on regulatory grounds, Claimants would have presented additional facts and argument concerning the meaning of § 5 of the Referral Agreement and Zola agreement which mandate a different result.

* * *

> Paragraph 120 of the Partial Award states that "the First Transaction would seem to satisfy the requirements" of § 3 of the Referral Agreement, entitling Claimants to a fee. *See* Partial Award ¶ 120. However, paragraph 120 continues that "the Bridging Transaction does not." *See id.* In view of the foregoing additional facts, which Claimants did not have notice and an opportunity to submit in connection with Respondent's Rule 33 Motion, there is, at a minimum, an issue of fact concerning whether the procurement of Mr. Sharpe as a "source" by Claimants and Canaccord in the First Transaction entitles Claimants to a fee on the Second Transaction— which unquestionably was done "with" both Canaccord and Sharpe, through his business entity, BFI, within the meaning of § 5 of the Referral Agreement. There is reason to believe that there is substantial further evidence in the possession of the Company, Canaccord and BFI that will demonstrate Claimants' right to a fee in connection with the Second Transaction. For example, Respondent has never disclosed whether Canaccord itself participated in some degree in the Second Transaction. Thus, the dismissal of Claimant's claims at the pleading stage is inappropriate.

> Even if Mr. Sharpe had not made a substantial investment in the First Transaction and had not received a board seat, the language of § 5 of the Referral Agreement is broad enough to entitle Claimants to a fee in the Second Transaction, because it was executed "with" Canaccord, which—as in the First Transaction—played a material role in the transaction as the Company's financial advisor. The term "with" in § 5 is broad enough to include not only a contractual counterparty, but also an agent acting on behalf of the Company— in this case its financial advisor. In view of the Company's conduct in the First Transaction, in which it paid Claimants for a transaction in which Canaccord served as the Company's financial advisor, there is no basis for distinguishing the Second Transaction, in which

13

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

> Canaccord also served as the Company's financial advisor (pursuant to a ROFR procured on Claimants' watch). *See Waverly*, 48 A.D.3d at 265, 851 N.Y.S.2d at 179.

*Id.*

45. In response, Respondent argued, primarily, that the Arbitrator was barred from revisiting the PFA under Rule 50 of the Commercial Rules, which states, in relevant part, that "[t]he arbitrator is not empowered to redetermine the merits of any claim already decided." Respondent also contended—contrary to the objective facts—that its Rule 33 Motion in fact encompassed, and was meant to encompass, arguments other than Respondent's regulatory arguments. *See* Exhibit 13. Respondent did not dispute Claimant's factual showing that Sharpe participated in the First Transaction. *See id.*

46. By letter dated August 12, 2021, Claimants replied in further support of their request to vacate or modify the PFA. *See* Exhibit 14. Claimants cited law establishing that they had a right to expect that the Rule 33 Motion would be limited to Respondent's regulatory defenses and had strong grounds to vacate the PFA in court. *See, e.g., Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) (vacating arbitration award on grounds of procedural unfairness).

**I.     The Arbitrator Declines to Vacate or Modify the Partial Final Award**

47. On August 20, 2021, the Arbitrator issued Procedural Order No. 2 ("PO2"), which denied Claimants' request to vacate or modify the PFA. *See* Exhibit 15. The Arbitrator's sole basis for declining to vacate the PFA was that he was forbidden to do so under Rule 50 of the Commercial Rules. *See id.* ¶¶ 23-24. PO2 stated, in relevant part:

> 23. The Commercial Rules, which are deemed to have been made part of their arbitration agreement, do not permit a Tribunal to revisit the merits of a case after the issuance of a final award irrespective of whether it is a partial final award or a final award. The language of Rule 50 is clear that "[t]he arbitrator is not empowered to redetermine the merits of any claim already decided."

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

> 24. ***The merits of Claimants' claims have already been decided in the Partial Final Award and cannot be revisited by way of a request by Claimants for me to vacate the Partial Final Award. Such relief is clearly outside the scope of Rule 50 of the Commercial Rules.***

*Id.* (emphasis added).

## IV.     ARGUMENT

48.     Under New York CPLR § 7511, a party to an arbitration may petition a court to vacate or modify the award on a number of grounds.[1] N.Y. C.P.L.R. 7511 (McKinney 2021). CPLR § 7511(b) provides that a court may vacate an arbitration award "if the court finds that the rights of that party were prejudiced," among other grounds, because: . . . (3) "an arbitrator, or agency or person making the award exceeded his power;" or (4) "failure to follow the procedure of this article, unless the party applying to vacate the award continued with the arbitration with notice of the defect and without objection." *Id.* § 7511(b). Alternatively, under § 7511(c)(2), a court may modify an arbitration award if "the arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted." *Id.* § 7511(c)(2).

49.   As set forth below, ample bases exist for the Court to vacate or modify the PFA on each of these grounds.

**B.     The Partial Final Award Should Be Vacated Under CPLR § 7511(b)(3) Because, in Dismissing Claimants' Claims on Grounds Beyond the Agreed Scope of Respondent's Rule 33 Motion, the Arbitrator Exceeded His Power**

---

[1] Such motion may be made within ninety days of the completion of service of the award, which under CPLR § 2103(b)(2) occurs five days after receipt by mail. *See* N.Y. C.P.L.R. 7511 (McKinney 2021) (stating motion "may be made by a party within ninety days after its delivery to him"); N.Y. C.P.L.R. 2103 (McKinney 2021) (stating "five days shall be added to the prescribed period if the mailing is made within the state"); *Milk Wagon Drivers & Dairy Emps. v. Elmhurst Dairy, Inc.,* 14 F. Supp. 3d 90, 95 (E.D.N.Y. 2014) (finding ninety-day statute of limitations begins to run five days after receipt of award by mail).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:21-cv-10313-MKV   Document 1-1   Filed 12/03/21   Page 17 of 53

50.     This Court first should vacate the PFA because, in dismissing Claimants' claims on grounds beyond the agreed scope of the Rule 33 Motion, the Arbitrator "exceeded his power" in violation of CPLR § 7511(b)(3).

51.     In declining to vacate the PFA, the Arbitrator relied exclusively on the *functus officio* doctrine, as codified in Rule 50 of the Commercial Rules, which holds that once an arbitration tribunal has issued a final award, it is without any power to reconsider or modify the award. *See Am. Int'l Specialty Lines Ins. Co. v. Allied Cap. Corp.,* 35 N.Y.3d 64, 71, 149 N.E.3d 33, 37 (2020) (stating, "under the common law rule, arbitrators relinquish all powers over the parties to the arbitration upon issuance of a final award and, therefore, are precluded from modifying or reconsidering that award").

52.     However, as the Court of Appeals of New York confirmed just last year, in *Am. Int'l Specialty Lines*, the *functus officio* doctrine applies only to an arbitration award that is *final—i.e.*, an award that is "coextensive with the issues submitted to the arbitrators by the parties." *Id.* [2] As the Court of Appeals found, "under our case law, a final arbitration award is *generally one that resolves the entire arbitration*." *Am. Int'l,* 35 N.Y.3d at 72, 149 N.E.3d at 38 (emphasis added).

53.     The PFA did not resolve "all of the issues submitted to the arbitrators by the parties." *See id.* Thus, under this clear standard, it was not a final award. Because the PFA was not final, neither the *functus officio* doctrine, nor Rule 50 of the Commercial Rules, were appropriate grounds upon which to decline Claimants' letter motion to vacate. *See id.* (finding arbitration panel was entitled to revisit and correct partial final award).

54.     Some federal courts have found an exception to this rule, where the parties expressly

---

[2] *See Mobil Oil Indonesia Inc. v. Asamera Oil (Indonesia) Ltd.,* 43 N.Y.2d 276, 281, 372 N.E.2d 21, 23 (1977) (finding interlocutory order did not constitute a final award on all issues submitted to arbitrators).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

agree that there shall be a partial final award on a specific issue. *See id.* (citing *Trade & Transp., Inc. v. Nat. Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991)). In such a case, the arbitrator may make an award within the scope of the express authority granted by the parties according to their "mutual understanding." *See id.*

55. In *Am. Int'l Specialty Lines*, the Court of Appeals found that the parties, by their express conduct, had not mutually authorized the panel of arbitrators to issue a partial final award on the validity of an insurer's denial of coverage, separate and apart from a determination of damages. *See id.* at 35 N.Y.3d at 72, 149 N.E.3d at 38. Thus, the panel was not precluded, under the doctrine of *functus officio*, from later reconsidering the partial final award—which had found that the insurer appropriately denied coverage—and issuing a corrected final award which reversed that decision. *See id.*

56. Here, the parties agreed that the Arbitrator would entertain a Rule 33 Motion. However, it is crystal clear that, by the express agreement of the parties, the Rule 33 Motion was limited exclusively to Respondent's regulatory arguments under federal and state securities laws. As in *Am Int'l Specialty Lines*, there was no mutual agreement by the parties that the Arbitrator could issue a partial final award on any other topic. *See id.* In deciding the PFA other than on regulatory grounds, the Arbitrator exceeded the express authority granted to him by the parties. Accordingly, the PFA should be vacated on grounds that it violated CPLR § 7511(b)(3).

### C.   The Partial Final Award Should be Vacated Because the Arbitrator Denied Claimants a Fair Opportunity to Present Evidence and Argument in Violation of CPLR § 7511(b)(4)

57. The Court further should vacate the PFA under CPLR § 7511(b)(4) on grounds that it was the result of an unfair procedure which denied Claimants a fair opportunity to present their evidence and argument, without prior warning.

58. "An arbitrator must give each of the parties to the dispute an adequate opportunity to

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

present its evidence and argument." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) (vacating arbitration award on grounds of procedural unfairness). A process that does not afford a party notice and an opportunity to present relevant argument is procedurally unfair and is grounds for *vacatur* of the award. *See id.; Teamsters, Chauffeurs, Warehousemen & Helpers, Loc. Union No. 506 v. E.D. Clapp Corp.*, 551 F. Supp. 570, 578 (N.D.N.Y. 1982), aff'd sub nom. *Teamsters, Chauffers v. Ed Clapp Corp.*, 742 F.2d 1441 (2d Cir. 1983) (vacating arbitration award under 9 U.S.C. § 10(c) on grounds of refusal of arbitrator "to hear evidence pertinent and material to the controversy").

59. "[I]t is hornbook law that arguments may not be made for the first time in a reply brief." *Browe v. CTC Corp.*, 15 F.4th 175, 191 (2d Cir. 2021) (internal quotation omitted); *see Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999) ("new arguments may not be made in a reply brief"); *People v. Cornachio*, 179 A.D.3d 498, 499, 118 N.Y.S.3d 22, 24, leave to appeal denied, 34 N.Y.3d 1157, 142 N.E.3d 1153 (1st Dep't 2020) (rejecting new arguments "improperly rais[ed] . . . in [appellant's] reply brief"). Except in unusual circumstances, not applicable here, a tribunal must ignore arguments presented for the first time in reply. *See Shi Ming Chen v. Hunan Manor Enter., Inc.*, No. 17CIV802GBDGWG, 2021 WL 2282642, at *9 (S.D.N.Y. June 4, 2021) ("Inasmuch as none of this was mentioned in the original motion, we do not consider these additions."). Such unfairly tardy arguments are "forfeited." *Browe*, 15 F.4th at 191.

60. As shown above, the parties expressly agreed that the Rule 33 Motion would adjudicate only Respondent's regulatory arguments. Nevertheless, Respondents inappropriately raised contractual arguments, for the first time, in their reply submission. Claimants had no reason to believe that the Arbitrator would consider such tardy and improper arguments—prior to any

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

discovery, when many of the relevant facts are exclusively within the possession of Respondent, Canaccord and BFI—without notice and an opportunity to be heard.

61.   To the extent that the Arbitrator mistakenly believed there were grounds to effectively grant summary judgment based on the language of the Referral Agreement, the Arbitrator should have followed a procedure akin to that in CPLR § 3211(c) and afforded Claimants notice of its intent to convert the motion and an opportunity to be heard. *See* N.Y. C.P.L.R. 3211 (McKinney 2021) (stating that the court, "after adequate notice to the parties, may treat the motion as a motion for summary judgment"). As shown above, even without discovery, Claimants at a minimum have established triable issues of fact concerning whether—by introducing Sharpe in the First Transaction—they referred the source of the Second Transaction. In any case, under the principle set forth in CPLR § 3211(e), the Arbitrator should not have granted a motion for summary judgment prior to discovery where the material facts were exclusively in the possession of Respondent, Canaccord and BFI.

62.   Accordingly, the Court should vacate the PFA on the additional grounds that it was the result of an unfair procedure which denied Claimants a fair opportunity to present its evidence and argument, in violation of CPLR § 7511(b)(4).

### D.   The Court Should Modify the Partial Final Award CPLR § 7511(c)(2)

63.   Alternatively, the Court should modify the PFA under § 7511(c)(2). As shown above, in deciding the Rule 33 Motion other than on regulatory grounds, the Arbitrator plainly awarded upon a matter not properly submitted to him. At this stage, the PFA may easily be corrected without affecting the merits of the Arbitration going forward. The Court may simply remand the matter back to the arbitrator with instructions to allow discovery and adjudicate all matters—after a hearing—in a complete final award coextensive with all of the issues submitted by the parties.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

**WHEREFORE**, Petitioners respectfully request that the Court vacate the PFA and remand

to the Arbitrator for further proceedings consistent with its order.

DATED:    New York, New York
November 2, 2021

Respectfully submitted,

PRESS KORAL LLP

By: *Matthew J. Press*
Matthew J. Press
Lexington Avenue, 13th Floor
New York, NY 10022
Telephone: (212) 922-1111
Facsimile: (347) 342-3882
mpress@presskoral.com

*Attorneys for Petitioners*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

Case 1:21-cv-10313-MKV   Document 1-1   Filed 12/03/21   Page 22 of 53

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the matter of:

ADULT USE HOLDINGS INC. and
ZOLA VENTURES LTD.,

                              Petitioners,

              -against-

FAZE CLAN INC.,

                              Respondent.

Index No.

**NOTICE OF PETITION TO
VACATE OR MODIFY
PARTIAL FINAL
ARBITRATION AWARD**

        PLEASE TAKE NOTICE THAT, upon the annexed Petition of Petitioners Adult Use

Holdings, Inc. and Zola Ventures Ltd., dated November 2, 2021, and the Exhibits thereto, the

undersigned will move this Court on December 10, 2021, at 9:30 a.m., or as soon thereafter as

counsel may be heard, in Room 130, Motion Submission Part, located at 60 Centre Street, New

York, NY, 10013, for an Order under CPLR § 7511(b)(1) and Federal Arbitration Act §§ 9 and

10, vacating the Partial Final Award, dated August 4, 2021 (the "PFA"), in the matter before the

American Arbitration Association captioned *Adult Use Holdings, Inc. and Zola Ventures Ltd. vs.

Faze Clan, Inc.*, Case No. 01-20-0015-8611 (the "Arbitration"); (2) remanding to the Arbitration

for further proceedings consistent therewith, as set forth below; and (4) for all such further relief

that the Court deems just and proper.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

PLEASE TAKE FURTHER NOTICE that these papers have been served on you at least sixteen days before the motion is scheduled to be heard. You must serve your answering papers and any notice of cross-motion with supporting papers, if any, at least seven days before such time.  Reply or responding affidavits shall be served at least one day before such time.

DATED:   November 2, 2021

PRESS KORAL LLP


BY:_____

Matthew J. Press
641 Lexington Avenue, 13th Floor
New York, NY  10022
tel: (212) 922-1111
fax: (347) 342-3882
cell: (347) 419-0983
mpress@presskoral.com


*Counsel to Petitioners*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

AMERICAN ARBITRATION ASSOCIATION

---

In the matter of:

ADULT USE HOLDINGS INC. and
ZOLA VENTURES LTD.,

Claimants,

-against-

FAZE CLAN INC.,

Respondent.

Case No. _____

**STATEMENT OF CLAIM**

---

Claimants Adult Use Holdings Inc. ("Adult Use") and Zola Ventures Ltd. ("Zola"), by and through their undersigned attorneys, bring this statement of claim against Respondent Faze Clan Inc. ("Faze" or the "Company") and in support thereof states the following:

<b>INTRODUCTION</b>

1.     This arbitration proceeding arises from a clear breach by the Company—a high growth, privately-held e-sports company—of two separate agreements to pay a 5% commission for the introduction of desperately needed funds, invested by or through third parties referred to the Company.

2.     Through its former President, Greg Selkoe, the Company made a clear and equivocal written promise to pay such commissions to both Adult Use and Zola, based respectively in Canada and the British Virgin Islands. Accordingly, by and through their agents, Adult Use and Zola introduced the Company to a Canadian funding source, Canaccord Genuity ("Canaccord"), which—along with its investment partners—arranged an initial investment in the Company's Series A convertible notes (the "First Transaction") in the amount of $5 million USD.

1

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

3.    In connection with the introduction by Messrs. Salman and Gimelshtein, Canaccord and the Company entered into a right of first refusal (the "ROFO") under which the Company agreed that if Canaccord successfully completed the First Transaction, the Company would partner with Canaccord in connection with a subsequent, far larger financing transaction.

4.    After the First Transaction, the Company confirmed the parties' agreements by duly paying each of Adult Use and Zola commissions in the form of cash and Series A convertible notes, at their election.

5.    However, at the same time that the Company acknowledged its agreements with Adult Use and Zola, pursuant to the terms of the ROFO, the Company secretly negotiated a second, vastly larger transaction with Canaccord, in the amount of $30 million CAD (the "Second Transaction"). Recognizing that it owed Adult Use and Zola commissions under the clear terms of their agreements, the Company deliberately concealed the negotiations and closing of the Second Transaction, until it was disclosed to the public.

6.    Due to the introductions of Adult Use and Zola, the Company enjoyed a tremendous increase in value and drew important new strategic investors, dramatically increasing the prospects of the Company.

7.    However, despite the admissions of both the former and current Presidents of the Company of Claimants' right to fees in connection with the Second Transaction, the Company refused to pay. Accordingly, Adult Use and Zola now bring this proceeding to obtain their rightful commissions of 5%, or $1,500,000 each, in connection with the Second Transaction.

## PARTIES

8.    Claimant Adult Use Holdings, Inc. is Ontario Corporation No. 0026661462, located at 317 Renfrew Drive, Suite 201, Markham, ON L3R-9S8 Canada.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

9.     Claimant Zola Ventures Ltd. a limited company organized under the laws of the British Virgin Islands, located at 3076 Sir Francis Drake's Highway, Road Town, Tortola BVI.

10.     Respondent Faze Clan Inc. is a Delaware corporation, located at 1800 Vine Street, Los Angeles, CA 90028.

## ARBITRATION PROVISION

11.     Under § 9 of the Referral Agreement between Adult Use and the Company, dated January 31, 2019, a copy of which is attached hereto as **Exhibit 1**, the parties agreed that "[i]n the event of a difference of opinion or dispute between the parties with respect to the construction or interpretation of this Agreement, or the alleged breach thereof, which cannot be settled amicably by agreement of the parties, such dispute shall be submitted to and determined by confidential arbitration in accordance with the commercial arbitration rules of the American Arbitration Association before a single arbiter."

12.     Sections 1 & 2 of the Arbitration Agreement between Adult Use, Zola and the Company, dated October 22, 2020, a copy of which is attached hereto as **Exhibit 2**, provide: "(1) The Parties agree to submit to arbitration any and all disputes arising out of or related to the Referral Agreement or the March 6, 2019 Email. (2) The arbitration shall be conducted in New York City in accordance with the Commercial Arbitration Rules of the American Arbitration Association currently in force (the "Rules") and the United States Arbitration Act before a sole arbitrator named in accordance with the Rules, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction."

## FACTUAL ALLEGATIONS

13. The Company is a privately-owned professional e-sports and entertainment organization based in Los Angeles, California. The Company has players from around the world,

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

across multiple games, including Call of Duty, Counter-Strike: Global Offensive, PlayerUnknown's Battlegrounds, Tom Clancy's Rainbow Six Siege, FIFA, Valorant and Fortnite Battle Royale.

14.   Adult Use and Zola are vehicles for investment in technology and other companies in a number of industries. Adult Use also provides advisory services to a variety of companies.

**A. THE COMPANY ENTERS INTO THE ADULT USE COMMISSION AGREEMENT**

15.   In late 2018, the Company commenced its series A funding round (the "Series A Round"), consisting of promissory notes convertible into the shares of the Company.

16.   On or about, January 29, 2019, Adam Salman, the principal of Adult Use, visited the Company's offices in Los Angeles, California with his friend and business associate, an international disc jockey known as "DJ Mike." While in the Company's offices, Mr. Salman met Faze's former President, Greg Selkoe.

17.   Mr. Salman did not visit the Company to propose raising capital, but rather was there purely for social purposes. Nevertheless, during the brief meeting, Mr. Selkoe proposed to Mr. Salman that, if he introduced the Company to prospective investors, the Company would pay a 5% commission for each successful transaction.

18.   Following the meeting, Mr. Selkoe memorialized this promise on behalf of the Company in § 3 of a Referral Agreement with Adult Use (the "Adult Use Commission Agreement"), under which Faze (the "Client") agreed "to pay to the Referrer a referral commission . . . equal to five percent (5%) of the dollar amount of securities purchased by the referred party in connection with the Funding as a direct result of introductions first made by the Referrer."

19.   Anticipating the possibility of multiple rounds of financing from a single referred source, § 5 of the Adult Use Commission Agreement provides that "[i]n any case where the Client

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

is contacted by one of the Referrer's sources directly after an introduction or referral has taken place, the Referrer will be entitled to their Commission on any transaction executed by the Client with the respective source; provided that (a) such source did not contact Client independently of Referrer's introduction and (b) less than two (2) years has passed since the Effective Date."

## B. THE COMPANY ENTERS INTO THE ZOLA COMMISSION AGREEMENT

20. In or about March 2019, pursuant to the Adult Use Commission Agreement, Mr. Salman introduced Mr. Selkoe to Igor Gimelshtein, of Zola, who was a former employee of Canaccord Genuity, a Canadian financial services company based in Toronto.

21. On behalf of the Company, Mr. Selkoe orally agreed that, if Messrs. Salman and Gimelshtein successfully obtained funding for the Company by and through Canaccord, in addition to the commission due to Adult Use, Mr. Gimelshtein's company, Zola, also would receive a commission of 5% of the amount of the capital raised, upon the same terms as the Adult Use Commission Agreement (the "Zola Commission Agreement").

## C. MESSRS. SALMAN AND GIMELSHTEIN INTRODUCE THE COMPANY TO CANACCORD

22. On or about March 2, 2019, Mr. Gimelshtein advised Michael Kogan—a Managing Director at Canaccord who specializes in gaming and e-sports, with whom Mr. Gimelshtein previously had worked—about the possibility of raising capital for the Company.

23. Mr. Kogan was excited by the opportunity. He told Mr. Gimelshtein that Canaccord had substantial recent experience raising funds in the e-sports space, with a number of current deals in process—including in connection with a venture called Luminosity—and a roster of investors already interested in making such investments. He stated "[f]or something like Faze Clan we could quite easily raise over $100m at a significant valuation, given the accounts we know that are interested in the space (given recent experience with Luminosity)."

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

24. Thereafter, in an email dated March 4, 2019, Messrs. Salman and Gimelshtein introduced Mr. Selkoe to Mr. Kogan, to arrange a teleconference to discuss a potential investment in the Series A Round by Canaccord and/or its investors. It is undisputed that neither Mr. Selkoe, nor any other officer or director of the Company previously had any contact with Canaccord in connection with raising funds for the Company in the Series A Round, or for any other reason.

25. In an introductory teleconference, on March 5, 2019 (the "Canaccord Introduction"), Messrs. Salman and Gimelshtein formally introduced Mr. Selkoe and the Company to Mr. Kogan and Canaccord. Also participating on the call were (1) the Company's Chief Financial Officer, Justin McKenna; (2) the Company's General Counsel, Philip Gordon; (3) the Company's current President, Lee Trink; (4) Erika Georgiou, of Faze; (5) Karen Kim, of Faze; and (6) Todd Radons, of Canaccord.

26. Following the Canaccord Introduction, in an email dated March 5, 2019, Mr. Selkoe followed up with Messrs. Kogan and Radons, stating "[a]s we discussed for purposes of operating capital and proving our thesis (getting us breakeven in Q-2). It would great to have you fill out the remaining $140mm ($4mm) in the note it is rolling close and it is first come first serve as long as we are comfortable with the investor or group."

### D. THE COMPANY MEMORIALIZES THE ZOLA COMMISSION AGREEMENT

27. Following the Canaccord Introduction, in an email dated March 6, 2019, Mr. Selkoe, on behalf of the Company, stated to Mr. Gimelshtein "I was pleased to hear your group (family offices) plans to take the remaining $4mm of the note in FaZe Clan. Per our discussion we are comfortable paying you 5% commission on money raised to be paid in stock (warrants, whatever is most advantageous for tax purposes) or cash or a combination of both at your election."

28. As confirmed by the parties' subsequent conduct, such 5% commission upon investments by and through Canaccord was in addition to the 5% commission payable by the

6

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Company to Adult Use.

**E. CANACCORD OBTAINS A RIGHT OF FIRST REFUSAL TO LEAD ANY SUBSEQUENT FINANCING OR OTHER CAPITAL TRANSACTION**

29.    After the initial introduction by email and phone, Mr. Kogan traveled to Los Angeles for a further meeting in the Company's offices to discuss a potential transaction. A meeting took place on March 12, 2019, which was attended by Mr. Salman. In the course of the meeting, Mr. Selkoe advised the group that, after closing out the Series A Round, the Company intended to pursue a second, much larger financing.

30.    Following the meeting, by email dated March 14, 2019, Mr. Kogan advised Mr. Selkoe that Canaccord wanted to lead the anticipated subsequent financing round. Indeed, Mr. Kogan requested that the Company give Canaccord a right of first refusal ("ROFR"), which would entitle it to do so if Canaccord was successful in completing the Series A Round. In the same email, Mr. Kogan acknowledged that "Adam/Igor . . . did introduce you to our firm and we are very grateful for this."

31.    Initially, the Company declined to grant Canaccord the proposed right of first refusal. However, in an email dated March 26, 2019, Mr. Kogan advised the Company's General Counsel, Phil Gordon, that "[t]he whole reason we are doing this is for the ROFR."

32.    Ultimately, after further negotiation between the Company and Canaccord, on April 6, 2019, the parties entered into a letter agreement granting Canaccord a ROFR to serve as the lead financial advisor in connection with a number of potential transactions, including a financing of over $25 million, upon the condition that Canaccord successfully raise funds and close out the Series A Round.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

**F. CANACCORD CLOSES ON INITIAL $5 MILLION TRANSACTION AND ADULT USE AND ZOLA RECEIVE THEIR DUE COMMISSION PAYMENTS**

33.    Thereafter, Canaccord successfully procured investors sufficient to close out the Series A Round, triggering its rights under the ROFR.

34.    In the First Transaction, which closed on or about December 24, 2019, Canaccord and its investment partners purchased a total of $5,335,000 in the Series A convertible debt of the Company. Neither Adult Use nor Zola was in any way involved in negotiating the terms of the First Transaction.

35.    Consistent with the Company's agreements, in July and August 2019, the Company paid each of Adult and Zola its due 5% commission in connection with the First Transaction. Among other things, the Company issued (1) $110,500 in Series A Shares, plus $210,000 in cash, to Adult Use; and (2) a $265,000 Convertible Promissory Note to Zola. In an email, dated May 16, 2019, from Mr. Selkoe to Messrs. Salman and Gimelshtein, Mr. Selkoe specifically referred to Zola's $265,000 note as the "canacord agreed commission."

36.    As a result of the First Transaction, both Adult Use and Zola became significant investors in the Company, and Messrs. Salman and Gimelshtein continued to provide further consulting services and strategic advice to the Company.

**G. FAZE SECRETLY NEGOTIATES AND CLOSES A SECOND TRANSACTION WITH CANACCORD WITHOUT COMPENSATING ADULT USE AND ZOLA, IN BREACH OF THE PARTIES' COMMISSION AGREEMENTS**

37.    Upon information and belief, before the First Transaction even had closed, pursuant to the terms of the ROFR, Faze and Canaccord secretly proceeded to negotiate a second, $30,000,000 CAD convertible loan facility, in partnership with Bridging Finance Group, also of Canada, in connection with which the Company was valued at over $220,000,000.

38.    Recognizing that, under the plain language of § 5 of the Adult Use and Zola

8

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Commission Agreements, Adult Use and Zola were entitled to 5% commissions in connection with such a subsequent transaction "executed by the [Company] with the respective source," Canaccord, occurring within two years of the agreements, the Company and Canaccord intentionally concealed the Second Transaction from Messrs. Salman and Gimelshtein.

39.     At all relevant times, Mr. Salman was in regular contact with Mr. Selkoe and the Company's General Counsel, Mr. Gordon, providing strategic advice and successfully helping to source further capital for the Company. Nevertheless, Messrs. Salman and Gimelshtein first learned of the Second Transaction from a general investor update issued by the Company on January 24, 2020.

40.     As a result of the Second Transaction—which was a product of the ROFR entered into in connection with the First Transaction—under the clear terms of the Adult Use and Zola Commission Agreements, each of Adult Use and Zola is entitled to a commission of cash, debt or shares, in their discretion, with a value of $1,500,000, or a combined total commission of $3,000,000.

## H. THE COMPANY'S PAST AND CURRENT PRESIDENTS EACH ADMITS THAT ADULT USE AND ZOLA ARE ENTITLED TO COMMISSIONS UNDER THE AGREEMENTS

41.     Prior to his departure from the Company, in April 2020, Mr. Selkoe admitted to Mr. Salman that Adult Use and Zola are entitled to their rightful commissions in connection with the Second Transaction—but proposed that they accept reduced commissions going forward.

42.     After Mr. Selkoe's departure from the Company, Mr. Salman confronted the new President, Mr. Trink. Mr. Trink did not dispute that fees were due and owing to Adult Use and Zola under the agreements, but complained only that the Company already had paid a fee to Canaccord and did not want to pay a second set of fees in a transaction which raised debt, rather than equity.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

43. However, under the plain language of the Adult Use and Zola Commission Agreements, a 5% commission is payable regardless of the payment of other fees by the Company, and regardless of the form of the investment.

44. Claimants Adult Use and Zola thus are entitled to an award in the amount of their rightful commissions under the Adult Use and Zola Commission Agreements, along with an award of their attorneys' fees and costs under the terms of those agreements.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

A.    For an award of all of Claimants' compensatory damages, collectively in the amount of no less than $3 million, plus prejudgment interest;

B.    For an award of Claimants' attorneys' fees and costs, as well as the costs of the mediation and/or arbitration, including the costs of the AAA and any arbitrator assigned to this matter;

C.    For an order awarding such other and further relief as this arbitration tribunal may deem just and proper.

DATED:  New York, NY
          November 24, 2020

Respectfully submitted,

PRESS KORAL LLP

By: _____
       Matthew J. Press
       641 Lexington Avenue, 13th Floor
       New York, NY 10022
       Telephone: (212) 922-1111
       Facsimile:  (347) 342-3882
       mpress@presskoral.com

*Attorneys for Claimants*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 3

REFERRAL AGREEMENT

Case 1:21-cv-10313-MKV   Document 1-1   Filed 12/03/21   Page 34 of 53   Exhibit 1

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 11/02/2021

This Referral Agreement (the "Agreement") is entered between Adam Salman of Adult Use Holdings Inc. (hereinafter the "Referrer") with its principal place of business located at 317 Renfrew Drive, Suite 201, Markham, ON L3R-9S8 CANADA, and FaZe Clan Inc. (hereinafter the "Client") with its principal place of business located at 1800 Vine Street, Los Angeles, CA 90028. The Agreement is effective as of _____1/31/2019_____ (the "Effective Date").

WHEREAS, the Referrer may make one or more introductions to the Client in connection with the Client's interest in obtaining new funding (the "Funding"). Funding shall include all commitments for newly issued debt, convertible debt, common or other stock, or any other form of ownership interest, in a private transaction or any other form of financing. Upon the terms and subject to the conditions of this Agreement, the parties hereby agree as follows:

1. The Referrer hereby agrees to act strictly as a referral and/or introduction source in connection with Funding.

2. The Referrer's referral obligations hereunder are on a reasonable best efforts basis only.

3. The Client shall pay to the Referrer a referral commission (hereinafter "Commission") equal to five percent (5%) of the dollar amount of securities purchased by the referred party in connection with the Funding as a direct result of introductions first made by the Referrer. The commission may comprise of either up-front payments in cash, or trailing commissions, or a combination of both depending on the type of the transaction and subject to agreement by the two parties.

4. The Commission is payable to the Referrer by wire transfer, concurrent with or promptly following the Client's receipt of Funding.

5. In any case where the Client is contacted by one of the Referrer's sources directly after an introduction or referral has taken place, the Referrer will be entitled to their Commission on any transaction executed by the Client with the respective source; provided that (a) such source did not contact Client independently of Referrer's introduction and (b) less than two (2) years has passed since the Effective Date.

6. Either party can terminate this agreement by providing 30 days written notice to the other party. However, subject to the terms of this Agreement, the Referrer shall still be entitled to Commission for any referrals made prior to any notice of such termination.

7. This Agreement constitutes the entire understanding and agreement between the parties with respect to its subject matter and there are no agreements or understandings with respect to the subject matter hereof which are not contained in this Agreement. This Agreement may be modified only in writing signed by both parties.

8. Each Party (the "Disclosing Party") shall regard as confidential and proprietary all of the information communicated to it by the other Party (the "Receiving Party") in connection with

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

this Agreement including, without limitation, the terms of this Agreement.  Neither Party shall, without the other Party's prior written consent, at any time, use or disclose such information for any purpose other than in connection with the performance of its obligations under this Agreement. This provision shall survive termination of this Agreement.

9. In the event of any difference of opinion or dispute between the parties with respect to the construction or interpretation of this Agreement, or the alleged breach thereof, which cannot be settled amicably by agreement of the parties, such dispute shall be submitted to and determined by confidential arbitration in accordance with the commercial arbitration rules of the American Arbitration Association before a single arbiter. Any arbitration hereunder and the award of the arbiter shall be final, and judgment upon the award rendered may be entered in any court (state or federal) having jurisdiction.

The parties hereby agree to the terms herein. Each party signing below represents and warrants that he has the requisite authority to sign on behalf of the indicated party.

**Adult Use Holdings Inc.**

_____
Signature

Adam Solman, Founder
_____
Name and Title

1/31/2019
_____
Date

**FaZe Clan Inc.**

_____
Signature

Greg Selkoe ,President
_____
Name and Title

1/31/2019
_____
Date

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

DocuSign Envelope ID: BBD03AA4-69FA-436E-8F34-A019EB0B4CF3

Case 1:21-cv-10313-MKV   Document 1-1   Filed 12/03/21   Page 36 of 53

Exhibit 2

# ARBITRATION AGREEMENT

**IT IS HEREBY AGREED BY** Adult Use Holdings Inc., Adam Salman, Zola Ventures Ltd., Igor Gimelshtein, and FaZe Clan Inc. (collectively, the "Parties") that

**WHEREAS**, Adam Salman of Adult Use Holdings Inc. with its principal place of business located at 317 Renfrew Drive, Suite 201, Markham, ON L3R-9S8 CANADA, and FaZe Clan Inc. (through its former President Greg Selkoe) executed a referral agreement ("Referral Agreement") with an effective of January 31, 2019;

**WHEREAS**, there is currently a dispute between Adam Salman and Adult Use Holdings Inc., on the one hand, and FaZe Clan Inc., on the other, concerning monies claimed by Adult Use Holdings Inc. from Faze Clan Inc.;

**WHEREAS**, the Referral Agreement provided that "In the event of any difference of opinion or dispute between the parties with respect to the construction or interpretation of this Agreement, or the alleged breach thereof, which cannot be settled amicably by agreement of the parties, such dispute shall be submitted to and determined by confidential arbitration in accordance with the commercial arbitration rules of the American Arbitration Association before a single arbiter. Any arbitration hereunder and the award of the arbiter shall be final, and judgment upon the award rendered may be entered in any court (state or federal) having jurisdiction."

**WHEREAS**, Igor Gimelshtein and Zola Ventures Ltd. state that they entered into an oral referral agreement with Greg Selkoe of Faze Clan Inc., memorialized in an email dated March 6, 2019, with the subject "Closing Out FaZe Clan Note/Commission" (the "March 6, 2019 Email");

**WHEREAS**, there is currently a dispute between Zola Ventures Ltd. and Igor Gimelshtein, on the one hand, and FaZe Clan Inc., on the other, concerning monies claimed by Zola Ventures Ltd. from Faze Clan Inc.;

**WHEREAS,** there is currently a dispute between Adam Salman and Adult Use Holdings Inc., on the one hand, and FaZe Clan Inc., on the other, over the formation, validity, and enforceability of the Referral Agreement; and there is currently a dispute between Zola Ventures Ltd. and Igor Gimelshtein, on the one hand, and FaZe Clan Inc., on the other, over the formation, validity, and enforceability of any oral referral agreement between them;

**WHEREAS**, each of the Parties considers it desirable that the disputes among them be resolved in a single confidential arbitration proceeding before a sole arbitrator;

**NOW, THEREFORE**, the Parties agree as follows:

1. The Parties agree to submit to arbitration any and all disputes arising out of or related to the Referral Agreement or the March 6, 2019 Email.

2. The arbitration shall be conducted in New York City in accordance with the Commercial Arbitration Rules of the American Arbitration Association currently in force (the "Rules")

NORMAL

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
INDEX NO. UNASSIGNED
DocuSign Envelope ID: BBD02AAA-69FA-436D-8F34-A919EB0B4CF3
Case 1:21-cv-10313-MKV Document 1-1 Filed 12/03/21 Page 37 of 53
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 11/02/2021
2

and the United States Arbitration Act before a sole arbitrator named in accordance with the Rules, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.

3. The parties agree that the existence of any dispute subject to this provision, any proceedings to resolve such dispute, and all submissions received by any party from any other party in connection with such dispute or proceedings shall be treated as confidential, and shall not be disclosed to any third party except as required by law or compelled by legal process, or as is necessary to confirm an award, enforce a judgment resulting from an award, or to obtain relief in aid of such proceedings or the enforcement of any award or judgment resulting therefrom.

4. The Parties agree that nothing in this Arbitration Agreement shall be deemed a waiver of any of the Parties' claims, counterclaims, or defenses.

Dated: October 19, 2020

**Adult Use Holdings Inc.**

By:_____

Title:____Adam Salman, director____

Date:_____Oct 20/20_____

**Adam Salman**

_____

Date:_____Oct 20/20_____

**Zola Ventures Ltd.**

By:_____

Title:____E. CAZIN, DIRECTOR____

Date:____19 Oct. 2020____

**Igor Gimelshtein**

_____

Date:_____

**FaZe Clan Inc.**

By:_____
2C54452481CD4E7...

Title:____CEO____

Date:____10/22/2020____

NORMAL

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

# INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
## Case No.  01-20-0015-8611

In the matter of:


### Adult Use Holdings, Inc.; Adam Salman; Zola Ventures Ltd., and Igor Gimelshtein

**Claimants and Counterclaim Respondents,**


v.


### Faze Clan Inc.

**Respondent and Counterclaimant.**

_____

### Procedural Order Number 1

_____


### Sole Arbitrator

### Mr. Henry G. Burnett


### May 12, 2021

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

1.  This Procedural Order ("**Procedural Order No. 1**") is issued by Henry G. Burnett, Sole Arbitrator, following an initial case management conference held among the Parties and the Sole Arbitrator on April 28, 2021.

### A.  THE PARTIES TO THE ARBITRATION AND THEIR COUNSEL

2.  Claimant and Counterclaim Respondent, Adult Use Holdings, Inc. is a company organized and existing under the laws of Ontario, Canada and is located at 317 Renfrew Drive, Suite 201, Markham, Ontario, ON L3R-9S8 Canada.

3.  Claimant and Counterclaim Respondent Zola Ventures Ltd., is a company organized and existing under the laws of the British Virgin Islands and is located at 3076 Sir Francis Drake's Highway, Road Town, Tortola BVI.

4.  Counterclaim Respondent Adam Salman is an individual who is a citizen of Canada.

5.  Counterclaim Respondent Igor Gimelstein is an individual who is a citizen of Canada.

6.  Claimant and Counterclaim Respondent is represented in these proceedings by:

> Matthew Press
> Press Koral LLP
> 641 Lexington Avenue
> 13th Floor
> New York, New York  10022
> USA
> Tel:  +1 212.922.1111
> Email:  mpress@presskoral.com

7.  Respondent and Counterclaimant, Faze Clan Inc. is a company organized and existing under the laws of Delaware, United States and is located at 1800 Vine Street, Los Angeles, California 90028.

8.  Respondent and Counterclaimant is represented in these proceedings by:

> Kevin Abikoff
> Hughes Hubbard & Reed LLP
> 1775 I Street NW
> Suite 600
> Washington, DC  20006
> USA
> Tel:  +1 202.721.4770
> Email:  kevin.abikoff@hugheshubbard.com

> James Boykin
> Hughes Hubbard & Reed, LLP
> 1775 I Street, NW
> Washington, DC  20006
> USA
> Tel:  +1 646.416.2987
> Email:  boykin@hugheshubbard.com

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Carter Rosekrans
Hughes Hubbard & Reed, LLP
1775 I Street, NW
Washington, DC 20006
USA
Tel:  +1 202.741.4944
Email:  carter.rosekrans@hugheshubbard.com

Robby Naoufal
Hughes Hubbard & Reed, LLP
1999 Avenue of the Stars
9th Floor
Los Angeles, CA 90067
USA
Tel:  +1 213.613.2896
robby.naoufal@hugheshubbard.com

## B.      THE ARBITRATION TRIBUNAL (SOLE ARBITRATOR)

9.      The Sole Arbitrator and his contact information are as follows:

Mr. Henry G. Burnett
King & Spalding LLP
1185 Avenue of the Americas
New York, New York 10036
USA
Tel:  +1 212.556.2201
Email:  hburnett@kslaw.com

10.      The Parties confirmed that they have no grounds for objection to the Sole Arbitrator or the manner of the Tribunal's constitution.

## C.      THE ARBITRATION AGREEMENT

11.      The Parties' agreement to arbitrate is found in the Arbitration Agreement by and between Adult Use Holding Inc., Adam Salman, Zola Ventures Ltd., Igor Gimelshtein and Faze Clan Inc. dated October 19, 2020 (the "Arbitration Agreement").

12.      The Arbitration Agreement provides in pertinent part:

**WHEREAS,** there is currently a dispute between Adam Salman and Adult Use Holdings Inc., on the one hand, and Faze Clan Inc., on the other, over the formation, validity, and enforceability of the Referral Agreement; and there is currently a dispute between Zola Ventures Ltd. and Igor Gimelshtein, on the one hand, and Faze Clan Inc., on the other, over the formation, validity, and enforceability of any oral referral agreement between them;

**WHEREAS,** each of the Parties considers it desirable that the disputes among them be resolved in a single confidential arbitration proceeding before a sole arbitrator;

2

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

**NOW, THEREFORE**, the Parties agree as follows:

1.      The Parties agree to submit to arbitration any and all disputes arising out of or related to the Referral Agreement or the March 6, 2019 Email.

2.      The arbitration shall be conducted in New York City in accordance with the Commercial Arbitration Rules of the American Arbitration Association currently in force (the "Rules") and the United States Arbitration Act before a sole arbitrator named in accordance with the Rules, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.

3.      The parties agree that the existence of any dispute subject to this provision, any proceedings to resolve such dispute, and all submissions received by any party from any other party in connection with such dispute or proceedings shall be treated as confidential, and shall not be disclosed to any third party except as required by law or compelled by legal process, or as is necessary to confirm an award, enforce a judgment resulting from an award, or to obtain relief in aid of such proceedings or the enforcement of any award or judgment resulting therefrom.

4.      The Parties agree that nothing in this Arbitration Agreement shall be deemed a waiver of any of the Parties' claims, counterclaims, or defences.

**D.      GOVERNING LAW**

13.     Neither the Referral Agreement by and between Adam Salman of Adult Use Holding Inc. and Faze Clan Inc. dated January 31, 2019 (the "Referral Agreement") nor the Arbitration Agreement specify a law governing the present dispute.  However, by correspondence dated May 7, 2021, the Parties confirmed they reached the following agreements: (i) the law applicable to the Referral Agreement is California law; and (ii) the law applicable to the Arbitration Agreement is New York law.  The Parties also confirmed that agreement on the applicable law is limited to the two contracts above-referenced agreements and is without prejudice as to what law may be applicable to any other instrument or contract relevant to any of the Parties' claims or defenses.  To the extent that the Parties' claims or defenses rely on any other instrument or contract, the Parties agree to address the law applicable to such instruments or contracts in any written submissions on the merits.

**E.      APPLICABLE PROCEDURAL RULES**

14.     The applicable procedural rules in this arbitration are the Commercial Arbitration Rules of the American Arbitration Association currently in force (the "Rules") and the Federal Arbitration Act, 9 U.S.C. §§ 1-307.

15.     For issues not dealt with in the Rules, the Sole Arbitrator shall apply the rules that the Parties have agreed upon.  In the absence of such agreement, the Sole Arbitrator shall apply the rules he deems appropriate.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

16.     The Sole Arbitrator may issue and amend procedural orders, after consulting with the Parties, on specific procedural issues if and when needed.

### F.    PLACE OF ARBITRATION AND HEARING LOCALE

17.     The place of arbitration is New York, New York, USA. Hearings will be conducted at a facility designated by the Sole Arbitrator in consultation with the Parties. Due to potential health concerns related to the COVID-19 pandemic, the Sole Arbitrator may also direct that any hearing take place virtually with appropriate safeguards and protocols in place.

### G.    PROCEDURAL TIMETABLE

18.     The procedural timetables for the arbitration ("**Procedural Timetables**") shall be as set out in **Annex A** to this Procedural Order No. 1. Annex A contains separate Procedural Timetables as follows: (i) a timetable for the Rule 33 application to be made by Respondent-Counterclaimant; (ii) a second timetable in the event the Rule 33 application is DENIED; and (iii) a second timetable in the event the Rule 33 application is GRANTED.

### H.    CONFIDENTIALITY

19.     The Parties are in agreement that this arbitration shall be confidential in nature as set forth in Paragraph 3 of the Arbitration Agreement.

### I.    TIME LIMITS

20.     Written notifications and communications will be considered on time if they are sent, whether by email or otherwise, by the sending Party prior to expiration of the relevant time limit by such means as are normally expected to result in a prompt delivery (*e.g.*, immediate delivery (if by email) or overnight (if by courier)).

21.     Except as may be otherwise ordered by the Sole Arbitrator, and subject to paragraph 24 (b) & (d) below, time limits shall expire at midnight, Eastern Time, on the date of the relevant time limit.

22.     Except for hearing dates, minor extensions or modifications of time limits may be agreed between the Parties, subject to the Sole Arbitrator's approval. Applications for extensions or modifications of time limits which are not agreed between the Parties shall be made to the Sole Arbitrator in writing at least five business days before expiration of the time limit in question, explaining why the extension is required and for what period of time. The Party opposing an extension shall submit its position in writing within three business days after submission of the Application. To the extent a Party may have reason to make any application for an extension or modification less than five business days before expiration of the time limit, it shall state as part of its request the reasons why the application was not made earlier, and the Sole Arbitrator shall have the discretion to take such further action as it considers appropriate under the circumstances.

### J.    MEANS OF COMMUNICATION

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

23. There shall be no *ex parte* communications (oral or written) with the Sole Arbitrator. A copy of any notification or communication by any Party to the Sole Arbitrator shall be simultaneously transmitted to the other Parties by the same means and to the ICDR solely by email.

24. Party submissions (such as those provided for in the Procedural Timetable) shall be made as follows:

    (a) electronic copies of submissions by the Parties (Briefs, Witness Statements and Expert Reports) shall be sent by email;

    (b) electronic copies of all supporting documentation (including exhibits and legal authorities) shall either be sent by email, uploaded to a secure server, or transmitted by thumb drive (formatted as PC or Mac compatible as each arbitrator may indicate), except that supporting documentation need not be sent to the ICDR. Supporting materials shall be provided or sent by courier (in the case of thumb drives) no later than the first business day after the due date;

    (c) all electronic copies of exhibits and legal authorities shall be provided in PDF searchable format and individual items will be separated into separate electronic files and labelled per paragraphs 29 and 30 below;

    (d) hard copies of Briefs, Witness Statements, Expert Reports, exhibits and legal authorities shall also be sent by courier, no later than three business days after the due date set forth in the Procedural Timetable; and

    (e) absent a contrary indication from the Sole Arbitrator, all hard copies of the filings for the use of the Sole Arbitrator shall be submitted in A-5 format, double-sided, wire bound and in soft covers. Three ring binders with hard covers are also acceptable. The Parties may supply extra copies of individual pages in a larger format where such documents would otherwise be illegible.

25. All briefs shall also be submitted in Microsoft Word and shall include a table of contents.

## K.   PARTY SUBMISSIONS

26. The Parties shall submit their allegations of facts, legal arguments and evidence in a detailed, specific and comprehensive manner.

27. All Briefs, Witness Statements and Expert Reports shall be divided into consecutively numbered paragraphs.

28. The Parties shall, whenever possible, identify the evidence adduced, or to be adduced, in support of every allegation.

29. The Parties shall identify each exhibit submitted to the Sole Arbitrator with a distinct number. Each exhibit submitted by Claimant shall begin with a letter "C" followed by the applicable number (*i.e.*, C-001, C-002, etc.). Each exhibit submitted by Respondent

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)     INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 4     Case 1:21-cv-10313-MKV   Document 1-1   Filed 12/03/21   Page 44 of 53   RECEIVED NYSCEF: 11/02/2021

shall begin with a letter "R" followed by the applicable number (*i.e.*, R-001, R-002, etc.).

30.    The Parties shall identify each legal authority submitted to the Sole Arbitrator with a distinct number. Each legal authority submitted by Claimant shall begin with the letters "CLA" followed by the applicable number (*i.e.*, CLA-001, CLA-002, etc.). Each legal authority submitted by Respondent shall begin with the letters "RLA" followed by the applicable number (*i.e.*, RLA-001, RLA-002, etc.). The Parties shall avoid submitting duplicate exhibits and legal authorities to the extent possible and may refer to each other's bundles of exhibits and legal authorities to that end.

31.    All evidence submitted to the Sole Arbitrator shall be deemed to be authentic and complete, including evidence submitted in the form of copies, unless a Party disputes within a reasonable time its authenticity or completeness, or the Party submitting the evidence indicates the respects in which any document is incomplete.

32.    When considering matters of disclosure and evidence, the Sole Arbitrator shall follow the Rules and may also be guided by, but shall not be bound by, the Rules on the Taking of Evidence in International Commercial Arbitration issued by the International Bar Association in 2020 (the "IBA Rules").

## L.    WITNESSES

33.    Any person may present evidence as a witness, including a Party's officer, employee, or other representative.

34.    For each witness in a Party's control, a written and signed witness statement shall be submitted to the Sole Arbitrator. A Party is not required to submit a witness statement for a witness on its case in chief who is an employee of, or otherwise controlled by, an adverse Party. No witness may testify at the hearing on the merits on behalf of a Party unless the witness has previously submitted a witness statement in accordance with the procedural timetable.

35.    Each witness statement shall contain at least the following:

    (a)    the name and current address of the witness;

    (b)    a description of the witness's position and qualifications, if relevant to the dispute or to the contents of the statement;

    (c)    a description of any past and present relationship between the witness and the Parties, counsel, or the Sole Arbitrator;

    (d)    a statement of the facts to which the witness is testifying and, if applicable, the source of the witness's knowledge; and

    (e)    the signature of the witness.

36.    Each Party shall notify the other Parties and the Sole Arbitrator of any witness it intends to call on its case in chief for whom a witness statement is not required as provided above.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)        INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 4                                                            RECEIVED NYSCEF: 11/02/2021

Case 1:21-cv-10313-MKV   Document 1-1   Filed 12/03/21   Page 45 of 53

37. Witness statements shall stand in lieu of direct examination, except that brief, introductory, direct testimony up to ten minutes in duration shall be allowed, the purpose of which shall be to introduce the witness, address any new developments that could not have been addressed in the witness's witness statement(s) and/or to summarize concisely key points of the witness's testimony.

38. Each Party shall be responsible for assuring the attendance of its own witnesses at the hearing on the merits, except when the other Party has waived cross-examination of a witness and the Sole Arbitrator does not direct his or her appearance.

39. The Sole Arbitrator may consider the witness statement of a witness who provides a valid reason for failing to appear at the hearing on the merits, having regard to all the surrounding circumstances, including the fact that the witness was not subject to cross-examination. The Sole Arbitrator shall not consider the witness statement of a witness who fails to appear, if the Party producing the witness statement or the witness in question fails to provide a valid reason for the latter's failure to appear.

40. Each Party shall cover the costs of appearance of its own witnesses. The Sole Arbitrator will decide upon the appropriate allocation of such costs in its final award.

41. At any hearing, the examination of each witness shall proceed as follows:

    (a) the Party presenting the witness may conduct a brief direct examination as delineated above;

    (b) the adverse Party may then cross-examine the witness on all relevant matters;

    (c) the Party presenting the witness may then re-examine the witness with respect to any matters or issues arising out of the cross-examination; and

    (d) the Sole Arbitrator may examine the witness at any time, either before, during or after examination by one of the Parties.

42. The Sole Arbitrator shall, at all times, have complete control over the proceedings.

43. The Sole Arbitrator may in his discretion:

    (a) decline to hear a witness if he considers that the facts with respect to which the witness will testify are either proven by other evidence or are irrelevant;

    (b) limit or refuse the right of a Party to examine a witness when it appears that a question has been addressed by other evidence or is irrelevant; or

    (c) direct that a witness be recalled for further examination at any time.

44. It shall not be improper for Counsel to meet witnesses and potential witnesses to establish the facts and to prepare the witness statements and the examinations.

## M.    EXPERTS

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 4    RECEIVED NYSCEF: 11/02/2021

Case 1:21-cv-10313-MKV    Document 1-1    Filed 12/03/21    Page 46 of 53

45. Each Party may retain and submit evidence of one or more experts. The procedural rules set out in Section L above shall apply *mutatis mutandis*, except that a full direct examination of expert witnesses (whether in the form of questions and answers or by presentation) shall be allowed. All expert reports shall include: (i) a detailed statement of the subject matter, opinions, and conclusions to which the expert will testify at the hearing; (ii) the basis for those opinions and conclusions; and (iii) the documents and sources upon which the expert has relied in forming his or her opinions and conclusions.

## N.    DOCUMENT PRODUCTION

46. Each Party may request the production of documents from the other Parties in accordance with the procedural timetable in Annex A.

47. Requests for the production of documents shall be in writing and set forth reasons for the request in respect of each document or category of documents requested. Unless the requested Party objects to production, it shall produce the requested documents within the time limit set in the procedural timetable.

48. The Parties shall seek agreement on production requests to the greatest extent possible.

49. If the requested Party objects to production, the following procedure shall apply:

(a) that Party shall submit a response, stating to which documents or categories of documents an objection to production is taken. The response shall state the reasons for each objection and shall indicate the documents, if any, that the Party is prepared to produce instead of those requested;

(b) the requesting Party shall respond to any such objection, indicating, with reasons, whether it disputes the objection;

(c) to the extent that agreement cannot be reached between the requesting and the requested Party, the Parties shall jointly submit such outstanding requests to the Sole Arbitrator for decision in accordance with the Procedural Timetable in Annex A. No other correspondence or documents exchanged in the course of this process shall be copied to the Sole Arbitrator;

(d) document production requests submitted to the Sole Arbitrator for decision shall be in the form of a "Horizontal Redfern Schedule," in the form of Annex B attached hereto detailing: (i) the documents or categories of documents requested; (ii) the relevance and materiality of the requested documents according to the requesting Party; (iii) the reasoned objection to the request by the objecting Party; and (iv) a brief reply to the objection by the requesting Party. Only those document requests requiring resolution by the Sole Arbitrator shall be submitted on the Horizontal Redfern Schedule; and

(e) the Sole Arbitrator shall rule on any such application.

8

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

50. Should a Party fail to produce documents as ordered by the Sole Arbitrator, the Sole Arbitrator shall draw the inferences it deems appropriate, taking into consideration all relevant circumstances.

51. The Sole Arbitrator may also request the production of documents in his discretion.

### O.   HEARINGS

52. After consultation with the Parties, the Sole Arbitrator shall determine the time, agenda, and all other technical and ancillary aspects of any hearing.

53. The Parties shall make arrangements for LiveNote transcription, or other equivalent service, at the hearing so as to make the hearing transcripts immediately accessible to the Parties and the Sole Arbitrator in the hearing room.  The costs of the transcription are to be advanced by each side in equal shares, without prejudice to the decision of the Sole Arbitrator as to which Party shall ultimately bear those costs.

54. No new exhibits may be presented at the hearing except with leave of the Sole Arbitrator upon a showing of good cause why such exhibits were not presented earlier. Demonstrative exhibits may, however, be shown using documents submitted earlier in accordance with this Order.  Should the Sole Arbitrator grant leave to a Party to present new exhibits in the course of the hearing, he shall grant the other Party the opportunity to introduce new evidence to rebut it.

55. The Parties shall agree on any corrections to the transcripts within ten (10) business days of receipt of the relevant transcripts.  Any disagreement between the Parties over corrections to be made to the transcripts will be resolved by the Sole Arbitrator.

### P.   GENERAL PROVISION

56. The Parties shall conduct themselves in a manner consistent with the efficient use of time and resources.  Any unreasonable behavior by a Party may be taken into account by the Sole Arbitrator when exercising his discretion in the allocation of costs in accordance with Rule 47(c) of the Rules.  Unreasonable behavior could include excessive document requests, dilatory tactics, exaggerated claims, failure to comply with procedural orders, and unjustified failure to meet the time limits contained in this Order.

### Q.   PARTY REPRESENTATION

57. Each Party has confirmed that its representatives, as identified above, are the only representatives (other than associates, paralegals, and other personnel of the respective law firms) currently retained by it in relation to this arbitration.

58. Should any Party engage any additional or alternative representative (other than associates, paralegals or other personnel of the respective law firms) in relation to this arbitration, that Party will make full disclosure to that effect (including the identity of the additional or alternative representative) as soon as practicably possible to the other Party and the Sole Arbitrator.

59. Following issuance of this Procedural Order No. 1, neither Party shall, without the prior written consent of the other Party, appoint a person to be a representative in the

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

arbitration when a relationship exists between that person and the Sole Arbitrator that would create a conflict of interest. The Sole Arbitrator may, on application from either Party or on its own motion in consultation with the Parties, exclude any additional or alternative representative from the arbitration if it concludes (having allowed the Parties due opportunities to make submissions on this point) that such exclusion is necessary to preserve the integrity of the arbitration, including the constitution of the Tribunal or the enforceability of any Award. In exercising this power, the Sole Arbitrator will have regard to all the circumstances, including the general principle that a party may be represented by a legal representative chosen by that party, the efficiency of maintaining the composition of the Tribunal as already constituted, and any wasted costs or loss of time likely to result from the presence of the additional or alternative representative. The Sole Arbitrator may seek guidance from, but shall not be bound by, the *IBA Guidelines on Party Representation in International Arbitration 2013* and the *IBA Guidelines on Conflicts of Interest in International Arbitration 2014*.

### R.     VARIATION OR MODIFICATION

60.     The terms of this Procedural Order No. 1, including the Procedural Timetables, may be varied or modified by the Sole Arbitrator, in whole or in part, after consultation with the Parties.

61.     A Party may apply to the Sole Arbitrator at any time, giving proper notice to the other Party, to vary or supplement this Procedural Order No. 1.

### S.     AWARD

62.     The Sole Arbitrator's award shall be in writing and shall state the reasoning on which the award rests.

**Place of Arbitration: New York, New York, USA**

**Date:   May 12, 2021**

_____
Henry G. Burnett
Sole Arbitrator

10

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

## ANNEX A

## AGREED PROCEDURAL TIMETABLE FOR RULE 33 BRIEFING

| No. | Action | Deadline |
|-----|--------|----------|
| 1. | Case Management Conference | April 28, 2021 |
| 2. | Respondent-Counterclaimant's Rule 33 Motion to Dismiss | May 14, 2021[1] |
| 3. | Claimants-Counterclaim Respondents' Opposition to Respondent-Counterclaimant's Rule 33 Motion to Dismiss | June 11, 2021 |
| 4. | Respondent-Counterclaimant's Reply to Claimants-Counterclaim Respondents' Opposition to Respondent-Counterclaimant's Rule 33 Motion to Dismiss | June 25, 2021 |
| 5. | Estimated date for Arbitrator's Ruling on Respondent's Rule 33 Motion | July 26, 2021 |

---

[1] Claimant-Counterclaim Respondent, upon receipt of Respondent-Counterclaimant's Rule 33 Motion, may, no later than three business days after receiving the Rule 33 Motion, submit to the Sole Arbitrator an application to request specific documents, limited in number, with an explanation why the documents are relevant to the Rule 33 Motion. The Sole Arbitrator shall promptly rule on the request and, if granted, the Parties shall propose any adjustments to the Procedural Timetable for the remaining dates in connection with the Rule 33 Motion. All other dates shall remain the same.

11

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 4    Case 1:21-cv-10313-MKV    Document 1-1    Filed 12/03/21    Page 50 of 53    RECEIVED NYSCEF: 11/02/2021

## ANNEX A
## Procedural Timetable if
## <u>Respondent's Rule 33 Motion is GRANTED</u>

| No. | Action | Deadline |
|-----|--------|----------|
| 5. | Counterclaimant's Statement of Counterclaim, together with all Exhibits, Authorities, Witness Statement(s) and Expert Report(s) | September 24, 2021 |
| 6. | Counterclaim Respondents' Statement of Defense to Counterclaim, together with all Exhibits, Authorities, Witness Statement(s) and Expert Report(s) | October 25, 2021 |
| 7. | Requests to Produce Documents | November 8, 2021 |
| 8. | Objections to Requests | November 22, 2021 |
| 9. | Production of Non-Objected Documents | December 3, 2021 |
| 10. | Reply to Objections | December 6, 2021 |
| 11. | Discovery Disputes Raised with the Tribunal | December 13, 2021 |
| 12. | Production of Documents Ordered by the Tribunal | January 7, 2021 |
| 14. | Counterclaimant's Reply, together with all Exhibits, Authorities, Witness Statement(s) and Expert Report(s) | February 4, 2022 |
| 15. | Counterclaim Respondents' Rejoinder | March 4, 2022 |
| 15. | Pre-hearing conference call (with counsel to meet and confer on hearing logistics and report to the Sole Arbitrator in advance) | Week of March 7,2022 |
| 16. | Hearing, New York | Week of April 4, 2022 |
| 17. | Post-hearing briefs | TBD at close of Hearing |

12

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

| No. | Action | Deadline |
|-----|--------|----------|
| 18. | Cost submissions | TBD at close of Hearing |

**Procedural Timetable if**
**Respondent's Rule 33 Motion is DENIED**

| No. | Action | Deadline |
|-----|--------|----------|
| 5. | Claimants-Counterclaim Respondents' Statement of Claim and Respondent-Counterclaimant's Statement of Counterclaim, together with all Exhibits, Authorities, Witness Statement(s) and Expert Report(s) | September 24, 2021 |
| 6. | Respondent-Counterclaimant's Statement of Defense and Claimants-Counterclaim Respondents' Statement of Defense to Counterclaim, together with all Exhibits, Authorities, Witness Statement(s) and Expert Report(s) | October 25, 2021 |
| 7. | Requests to Produce Documents | November 8, 2021 |
| 8. | Objections to Requests | November 22, 2021 |
| 9. | Production of Non-Objected Documents | December 3, 2021 |
| 10. | Reply to Objections | December 6, 2021 |
| 11. | Discovery Disputes Raised with the Tribunal | December 13, 2021 |
| 12. | Production of Documents Ordered by the Tribunal | January 7, 2021 |
| 14. | Claimants-Counterclaim Respondents' and Respondent-Counterclaimant's Replies, together with all Exhibits, Authorities, Witness Statement(s) and Expert Report(s) | February 11, 2022 |

13

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

| No. | Action | Deadline |
|-----|--------|----------|
| 15. | Pre-hearing conference call (with counsel to meet and confer on hearing logistics and report to the Sole Arbitrator in advance) | Week of February 14, 2022 |
| 16. | Hearing, New York | First two weeks of March, 2022 |
| 17. | Post-hearing briefs | TBD at close of Hearing |
| 18. | Cost submissions | TBD at close of Hearing |

14

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

## ANNEX B

### Model Schedule for Disputed Document Requests

| Document Request No | |
|---|---|
| **A. Documents or category of documents requested (requesting Party)** | |
| **B. Relevance and materiality (requesting Party)** | |
| **C. Objections to document request (objecting Party)** | |
| **D. Response to objections and request for resolution (requesting Party)** | |
| **E. Decision of the Sole Arbitrator** | |

38570382.v1

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.