```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/28/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ADULT USE HOLDINGS INC. and ZOLA VENTURES LTD.,

                        Petitioners,

           -against-

FAZE CLAN INC.,

                        Respondent.

1:21-cv-10313-MKV

OPINION AND ORDER
CONFIRMING ARBITRATION AWARD

---

MARY KAY VYSKOCIL, United States District Judge:

Petitioners Adult Use Holdings Inc. ("Adult Use") and Zola Ventures LTD ("Zola") commenced this action seeking to vacate, or in the alternative to modify, an arbitration award issued against them and in favor of Respondent FaZe Clan Inc. ("FaZe Clan"). The Court now considers that petition to vacate or modify the award [ECF No. 1], as well as Respondent's cross-petition to confirm the award [ECF No. 7]. For the reasons explained below, the petition to vacate or modify the award is denied, and the cross-petition to confirm the award is granted.

## BACKGROUND[1]

### I. FACTS

Adult Use and Zola are foreign business entities organized under the laws of Ontario, Canada and the British Virgin Islands, respectively. ECF No. 13 ("Pet. Br."), Ex. 11 ("Arbitration Award" or "AA") ¶¶ 1-2. FaZe Clan is an e-sports and entertaining organization founded in 2010 and incorporated in Delaware. AA ¶ 3.

---

[1] The facts in this section are drawn from the parties' respective petitions, their supporting papers, and the exhibits attached thereto, including the Arbitration Award. They are uncontested unless otherwise noted.

In late 2018, FaZe Clan commenced its Series A funding round and was on the lookout for investors. AA ¶ 25. To that end, the President of FaZe Clan, Greg Selkoe, told Adam Salman, the principal of Adult Use, that FaZe Clan would pay Adult Use a 5% commission if Salman introduced prospective investors and a successful transaction resulted. AA ¶¶ 26-27. This proposal was memorialized in a Referral Agreement, which provided that "[t]he Client [FaZe Clan] shall pay to the Referrer [Adult Use] a referral commission . . . equal to five percent (5%) of the dollar amount of securities purchased by the referred party in connection with the Funding as a direct result of introductions made by the Referrer." AA ¶¶ 27-28.

Soon after entering that agreement, Salman introduced Selkoe to Igor Gimelshtein, of Zola Ventures, who was a former employee of a Canadian financial services company called Canaccord Genuity ("Canaccord"). AA ¶ 29. According to Petitioners, Selkoe orally agreed that if Salman and Gimelshtein obtained funding for the company through Canaccord, then both parties—*i.e.*, Adult Use and Zola—each would receive a 5% commission on the amount of the capital raised. AA ¶ 29. With that alleged agreement in place, Gimelshtein and Salman introduced Selkoe to Michael Kogan—a Managing Director at Canaccord who specializes in e-sports. AA ¶¶ 30-32.

It was a solid match. Not only did Kogan want to invest in the Series A funding round, but he also informed Selkoe that Canaccord was interested in leading the anticipated financing round (the Series B), and that it sought a right of first refusal which would entitle it to do so. AA ¶¶ 34-35. FaZe Clan agreed to the right of first refusal on the condition that Canaccord successfully raised funds and closed out the Series A round, which it did. AA ¶ 36. Canaccord and its investment partners ultimately purchased over $5 million in convertible debt in this initial financing round. AA ¶ 37. Adult Use and Zola each received a 5% commission. AA ¶ 38.

Next came the Series B. Adult Use and Zola had no involvement in this funding round. AA ¶ 43. Rather, Canaccord took the lead and negotiated a $30,000,000 CAD convertible loan facility, in partnership with Bridging Finance Group ("Bridging"). AA ¶¶ 40-41. FaZe Clan paid a 5% fee to Canaccord for facilitating the fundraising. AA ¶ 44; ECF No. 8 ("Resp. Br.") at 9. Adult Use and Zola each claimed entitlement to a 5% commission based on this transaction; but they got nothing. AA ¶¶ 44-45.

II.     ARBITRATION

With the dispute over referral fees brewing, Adult Use and Zola entered an agreement with FaZe Clan, which provided that the parties would "submit to arbitration any and all disputes arising out of or related to" the "Referral Agreement" between Adult Use and FaZe Clan and the alleged oral agreement between Zola and FaZe Clan. Pet. Br., Ex. 1. The arbitration agreement further provided that "[t]he arbitration shall be conducted in New York City in accordance with the Commercial Arbitration Rules of the American Arbitration Association ["AAA"] . . . before a sole arbitrator named in accordance with the Rules and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction." Pet. Br., Ex. 1.

On November 30, 2020, Adult Use and Zola filed their Statement of Claim with the AAA claiming CAD $3 million as commission for the CAD $30 million loan made to FaZe Clan by Bridging, brokered by Canaccord. Pet. Br., Ex. 1. These claims were based on Section 3 of the Referral Agreement, and the alleged oral agreement with Zola, that provided that Respondent "shall pay to the referrer [Adult Use] a referral commission . . . equal to five percent (5%) of the dollar amount of securities purchased by the referred party in connection with the Funding as a direct result of introduction first made by the Referrer." Pet. Br., Ex. 1.

Respondent filed an Answer and Counterclaims. Pet. Br., Ex. 5. In its Answer, FaZe Clan asserted that Adult Use and Zola were not entitled to any commission on the loan from

Bridging because "Bridging was not a 'referred party,' and the Bridging Transaction was not a 'direct result' of introductions first made by Adult Use." Pet. Br., Ex. 5 ¶¶ 43-46. FaZe Clan further provided that it intended to make a motion for summary disposition, which, if successful, would dispose entirely of the claims brought by Adult Use on the grounds that "Claimants are not registered brokers and any contract they claim to have with FaZe Clan would be illegal, void, and unenforceable." Pet. Br., Ex. 5 ¶ 25. All that would remain in the event that this motion was successful would be the counterclaims brought by FaZe Clan, which sought a return for all sums that had been paid to Adult Use and Zola in connection with the Series A investment round. Pet. Br., Ex. 5 ¶¶ 25, 49-54. These counterclaims were similarly based on the theory that such sums were paid unlawfully since none of the referring parties—*i.e.*, Salman, Adult Use, Gimelshtein, and Zola—was a registered broker dealer. Pet. Br., Ex. 5 ¶¶ 49-54.

Henry Burnett, a partner at King & Spalding LLP, was appointed by AAA to serve as sole arbitrator for the proceedings (the "Arbitrator"). AA ¶ 8; Resp. Br. at 6. At the first case management conference, FaZe Clan informed the Arbitrator that it intended to file a motion to dismiss, under Rule 33 of the Commercial Rules, on the grounds that federal and state securities law prohibits Adult Use and Zola from recovering referral fees. Resp. Br. at 6-7. Consistent with that discussion, FaZe Clan e-mailed the Arbitrator the following:

> As you may recall, Respondent's answer indicated that Respondent would seek leave to make a dispositive motion under Rule 33. One of Respondent's defenses is that the federal securities laws and sate blue sky laws prohibit Respondent from paying unregistered broker-dealers. Claimants' position is that they fall within exemptions to those prohibitions.
>
> The Parties have agreed that the most efficient and economical way to proceed in this arbitration would be for you to resolve that legal question as a preliminary matter, and we have agreed upon the following briefing schedule for doing so . . . .

Pet. Br., Ex. 6.

Shortly after receiving this e-mail, the Arbitrator entered Procedural Order No. 1, which set a deadline for FaZe Clan to file its Motion to Dismiss. Pet. Br., Ex. 2, at Annex A. In its motion, FaZe Clan argued that "there are multiple grounds for denying Claimants' claims on the merits, including that . . . Adult Use is not entitled to a commission on the Bridging Transaction under the terms of its agreement with FaZe Clan because, among other reasons, Adult Use had no involvement whatsoever in that transaction." Pet. Br., Ex. 8 ¶ 2. However, FaZe Clan went on to explain that the contractual issue need not be decided because "[b]oth federal securities law and applicable California state securities laws . . . prohibit the payment of transaction based commissions to unregistered securities brokers, like the Claimants, and those same laws provide that any contracts to pay such unlawful commissions are void and unenforceable." Pet., Ex. 8 ¶ 3.

In their opposition, Adult Use and Zola argued, among other things, that they were not required to comply with federal and state laws requiring the registration of brokers because they had no involvement in brokering the loan from Bridging—*i.e.*, the loan for which they were claiming a CAD $3 million commission. Pet. Br., Ex. 8 ¶ 37. Specifically, Adult Use and Zola stated that they "never had any direct contact with Canaccord's capital sources, those persons who actually purchased the securities," and that they "did no more than introduce [FaZe Clan] to Canaccord." Pet., Ex. 9 ¶ 37. Latching onto this this language, FaZe Clan argued in its reply that "in straining to escape the application of securities laws, Claimants' Opposition asserts new facts that, if true, establish that Claimants' claim unequivocally fails as a matter of contract." Pet. Br., Ex. 10 ¶ 3.

On August 4, 2021, the Arbitrator issued a "Partial Final Award" dismissing the claims brought by Adult Use and Zola. Pet., Ex. 11 ¶¶ 119-24. In so doing, the Arbitrator concluded

that it had no need to decide the "technical" regulatory issues raised because "it is the plain language of the Referral Agreement that is dispositive." AA ¶¶ 115, 124. Specifically, the Arbitrator held that "based on the plain language of the Referral Agreement Claimant Adult Use Holdings is not entitled to any commission for the Bridging Transaction and accordingly, neither is Zola Ventures, which has no agreement with Respondent related to the Bridging Transaction." AA ¶ 112.

A few days later, Adult use and Zola wrote a letter requesting that the Arbitrator vacate the Partial Final Award. Resp. Br. at 12. The letter contended that the contractual language that formed the basis of the Arbitrator's decision "was not within the scope of Respondent's initial motion," and that "[h]ad Claimants been on notice that [the Arbitrator] might decide the Rule 33 motion other than on regulatory grounds, Claimants would have presented additional facts and argument concerning the meaning of [the referral agreements]." Pet. Br., Ex. 12. In response, FaZe Clan argued that under the AAA Commercial Arbitration Rules the arbitrator had no authority to "redetermine the merits of any claim already decided." Pet. Br., Ex. 13 at 1 (quoting AAA Commercial Arbitration Rule 50). Adult Use and Zola replied that "Rule 50 does not address partial awards, particularly under circumstances like those in the present case, in which there is clear merit to a position that a party—for procedural reasons—had no reason to present." Pet. Br., Ex. 14 at 2.

The Arbitrator denied the application to vacate the Partial Final Award in Procedural Order No. 2, which provided in pertinent part:

> The Commercial Rules, which are deemed to have been made part of their arbitration agreement, do not permit a Tribunal to revisit the merits of a case after the issuance of a final award irrespective of whether it is a partial final award or a final award. The language of Rule 50 is clear that "[t]he arbitrator is not empowered to redetermine the merits of any claim already decided."

Pet. Br., Ex. 15 ("Procedural Order No. 2") ¶ 23 (quoting AAA Commercial Arbitration Rule 50).

As a result of the Partial Final Award, the sole issues remaining in the arbitration concern the counterclaims brought by FaZe Clan (seeking refund of the sums paid in the Series A round on the basis that Adult Use and Zola are not registered brokers and could not legally receive referral fees).

## PROCEDURAL HISTORY

Adult Use and Zola filed a petition in New York state court to vacate, or in the alternative to modify, the arbitral award under New York law and the FAA. [ECF No. 1, Ex. A]. FaZe Clan removed the case to federal court under 9 U.S.C. § 205, which authorizes the removal of an action from state to federal court if the action "relates to an arbitration agreement . . . falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards]." [ECF No. 1]. FaZe Clan opposed the petition to vacate and cross-moved to confirm the arbitration award. [ECF Nos. 7-9]. Adult Use and Zola opposed FaZe Clan's cross-motion by filing an exact replica of its petition for vacatur or modification [ECF No. 13],[2] and FaZe Clan replied [ECF No. 15].

## LEGAL STANDARD

Adult Use and Zola challenge the Partial Final Award through New York's Civil Practice Laws and Rules ("CPLR"), claiming that the award should be vacated because the arbitrator "exceeded his power" and because the award "was the result of an unfair procedure which

---

[2] In its reply, FaZe Clan claimed that the opposition filed by Adult Use and Zola was untimely (filed two days after the deadline) and that, as a result, the Court should enter an order in favor of FaZe Clan. Reply Br. at 1. But FaZe Clan fails to cite any authority that would support such a harsh remedy. True, the Court "need not consider the untimely opposition." *Li v. Ali Baba Grp. Holding Ltd.*, No. 19-cv-11629, 2021 WL 4084574, at *3 n.3 (S.D.N.Y. Sept. 7, 2021). But that seems an unnecessary remedy given that, as FaZe Clan notes, the opposition filed by Adult Use and Zola is, oddly enough, a replica of its petition for vacatur. Reply Br. at 1. The Court will thus take the opposition for what it is worth, which is that it effectively adds nothing.

denied [them] a fair opportunity to present their evidence and argument." Pet. Br. at ¶¶ 8-9 (citing CPLR § 7511(b)(3)-(4)). As FaZe Clan notes, however, the Partial Final Award is subject to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), 9 U.S.C. §§ 201 *et seq.*, and the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), and not subject to the CPLR. Specifically, the New York Convention governs because the award resulted from a written agreement to arbitrate a commercial dispute in the United States, and the dispute "involv[ed] parties domiciled or having their principal place of business outside the [United States]." *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997).

Under the New York Convention, "a court must confirm an arbitral award 'unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.'" *Zurchin Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 588 (2d Cir. 2016) (quoting 9 U.S.C. § 207). In addition, "[t]he award in this case having been rendered in the United States, available grounds for vacatur include all the express grounds for vacating an award under the FAA." *Zurchin*, 811 F.3d at 588. Article V of the New York Convention specifies seven grounds for denial of confirmation,[3] while the FAA outlines four grounds for

---

[3] The grounds are:

(a) The parties to the agreement [to arbitrate] were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decision on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

doing so.[4]  As discussed below, certain of these grounds are sufficiently analogus to the CPLR provisions on which Adult Use and Zola based their claims, such that the Court may analyze these claims under the proper standard without requiring additional briefing.

## DISCUSSION

### I. THE COURT HAS AUTHORITY TO REVIEW THE AWARD

There is a threshold question in this case concerning the Court's authority to review the Partial Final Award.  The Second Circuit has clearly established that under the FAA a district court only has the power to confirm or vacate a "final" arbitration award.  *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980).  Courts within this Circuit have held that this jurisdictional requirement applies with equal force to petitions to confirm or vacate an arbital

---

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside by a competent authority of the country in which, or under the law of which, that award was made.

New York Convention art.V(1). And:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country [i.e., the country where recognition and enforcement is sought]; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

*Id.* art. V(2).

[4] The circumstances are:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiaility or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

award under the New York Convention. *See, e.g.*, *Ecopetrol S.A. v. Offshore Expl. & Prod. LLC*, 46 F. Supp. 3d 327, 336 (S.D.N.Y. 2014) ("Under the Convention, district courts lack authority to confirm arbitral awards that are not final awards."); *Sharbat v. Muskat*, No. 17-cv-4776, 2018 WL 4636969, at *7 (E.D.N.Y. Sept. 27, 2018) (same).

Generally, to be "final" and "definite," an arbitration award "must resolve all the issues submitted to arbitration, and . . . must resolve them definitively enough so that the rights and obligations of the two parties, *with respect to the issues submitted*, do not stand in need of further adjudication." *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998). However, the Second Circuit has carved out an exception, explaining that "[a]n award that finally and conclusively disposes of a 'separate independent claim' may be confirmed even if it does not dispose of all the claims that were submitted to arbitration." *Kerr McGee Ref. Corp. v. M/T Triumph*, 924 F.2d 467, 471 (2d Cir. 1991) (quoting *Megallgesellschaft A.G. v. M/V Captain Constante*, 790 F.2d 280, 283 (2d Cir. 1986)).

Here, the Arbitrator finally and conclusively disposed of the claims brought by Adult Use and Zola, such that the only claims remaining in the arbitration are the counterclaims brought by FaZe Clan. *See* Procedural Order No. 2 ¶ 24 ("The merits of Claimants' claims have already been decided in the Partial Final Award and cannot be revisited . . . ."). While these counterclaims rest upon some of the same facts as the dismissed claims, that is merely the nature of counterclaims, and the overlap does not preclude the Court from concluding that those claims are entirely separate and independent. As such, the Court finds that the Arbitrator issued a "final" arbitration award that may be reviewed by a federal district court.

## II.    THE ARBITRATOR DID NOT EXCEED HIS POWERS

Section 10(a)(4) of the FAA allows courts to vacate an arbitral award "where the arbitrators exceed their powers." 9 U.S.C. § 10(a)(4). Importantly, however, the Second Circuit

has "consistently accorded the narrowest of readings" to this provision. *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009) (internal quotation marks omitted). Specifically, the inquiry under this provision "focuses on whether the arbitrators had the power based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 220 (2d Cir. 2002) (internal quotation marks omitted). Article V(1)(c) of the New York Convention "tracks in more detailed form" Section 10(a)(4) of the FAA and should likewise "be construed narrowly." *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier*, 508 F.2d 969, 976 (2d Cir. 1974).[5]

Adult Use and Zola first argue that the Court should vacate the Partial Final Award because the Arbitrator exceeded his power by dismissing their claims on grounds outside the agreed upon scope of the Rule 33 Motion. In particular, they contend that the Rule 33 Motion was intended to cover only the regulatory issues related to broker dealers, and not the contractual issues more generally. This argument is not entirely without basis. After all, the letter sent to the Arbitrator prior to the motion practice provided that "[t]he Parties have agreed that the most efficient and economical way to proceed in this arbitration would be for you to resolve that legal question [of whether the federal securities laws and state blue sky laws prohibit FaZe Clan from paying unregistered broker-dealers] as a preliminary matter." Pet. Br., Ex. 6. That agreement resulted in an opening brief filed by FaZe Clan which argued the regulatory issues alone, eliding any substantive discussion of the contractual terms. Under the circumstances, the Arbitrator may

---

[5] That provision of the New York Convention provides that an award may be vacated if: "The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on the matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matter submitted to arbitration may be recognized and enforced." New York Convention, art. V(1)(c).

very well have decided the motion to dismiss on grounds other than those initially contemplated by the parties.

But that is irrelevant. There is clear Second Circuit caselaw "emphasiz[ing] that an arbitrator's authority to decide an issue is determined by *either* the parties' submissions or the arbitration agreement." *Glob. Int'l Reinsurance Co. v. TIG Ins. Co.*, No. 08-cv-7338, 2009 WL 161086, at *6 n.4 (S.D.N.Y. Jan. 21, 2009) (citing *Westerbeke*, 204 F.3d at 220). Here, the arbitration agreement provides for arbitration of "any and all disputes arising out of or related to the Referral Agreement." Pet. Br., Ex. 11 ¶ 10. This clearly encompasses the defense raised by FaZe Clan that Section 3 of the Referral Agreement did not apply to the deal with Bridging. The Arbitrator thus acted within his authority when he disposed of the claims brought by Adult Use and Zola on those grounds, rather than on regulatory grounds.

Adult Use and Zola also contend that the Arbitrator exceeded his authority by declining to reconsider his dismissal of their claims. In so doing, the Arbitrator concluded that "[t]he Commercial Rules, which are deemed to have been made part of their arbitration agreement, do not permit a Tribunal to revisit the merits of a case after the issuance of a final award irrespective of whether it is a partial final award or a final award." Procedural Order No. 2 ¶ 23. Adult Use and Zola claim that this was in error because the Partial Final Award did not resolve "all of the issues submitted to the arbitrators by the parties" and thus did not constitue a final award. Pet. Br. ¶ 53 (quoting *American International Specialty Lines Insurance Co. v. Allied Capital Corp.*, 35 N.Y.3d 64, 72, 125 N.Y.S.3d 340, 149 N.E.3d 33 (2020)).

For the reasons explained above, the Court concludes that the Partial Final Award was, as the Arbitrator concluded, a final (albeit a partial) award. In any event, the real objection that Adult Use and Zola raise is not that the Arbitrator exceeded his powers in declining to reconsider its award. Rather, the "real objection appears to be that the arbitrator[] committed an obvious

legal error in denying [reconsideration]." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir. 1997). As the Second Circuit has explained, however, "Section 10(a)(4) was not intended to apply to such a situation." *Id.* The Court therefore rejects Petitioners' argument on this score.

### III.  PETITIONERS WERE NOT DEPRIVED OF A FAIR OPPORTUNITY TO PRESENT EVIDENCE

Section 10(a)(3) of the FAA permits vacatur "where the arbitrators were guilty of misconduct in . . . refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). Similarly, the New York Convention, Article V(1)(b), permits courts to reject arbitration awards where "the party against whom the award is invoked was . . . unable to present his case." The Second Circuit has explained that these provisions protect "the fundamental requirement of due process," which is "the opportunity to be heard at a meaningful time and in a meaningful manner." *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 146 (2d Cir. 1992). Still, "[a]rbitration proceedings are not contrained by formal rules of evidence or procedure," *GFI Sec. LLC v. Labandeira*, No. 01-cv-793, 2002 WL 460059, at *7 (S.D.N.Y. Mar. 26, 2002), and "an arbitrator need not follow all the niceties observed by the federal courts," *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) (internal quotation marks omitted).

Adult Use and Zola contend that the Partial Final Award should be vacated because "it was the result of an unfair procedure which denied [them] a fair opportunity to present their evidence and argument, without prior warning." Pet. Br. ¶ 53. This arguments rests on the fact that FaZe Clan did not raise any contractual argument until the reply brief, which, according to Petitioners, precluded the Arbitrator from considering that argument, and denied Petitioners an opportunity to respond. At first blush, this sounds concerning. But the argument ignores some basic legal precedents and a critical fact.

First, while it is true that "[i]ssues raised for the first time in a reply brief are generally deemed waived," *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010), there is no hard-and-fast rule that prohibits courts from considering such last-minute issues, *see Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (holding that the district court had discretion to consider an issue first raised in reply papers).  Second, and critically, while the contractual arguments may have taken Adult Use and Zola by surprise, they remained flat-footed for far too long.  No attempt was made to respond to these new arguments (or request an opportunity to do so) in the weeks between the filing of the reply brief and the issuance of the arbitration award.  Had a request for a sur-reply been made and rejected, Adult Use and Zola may very well have had a winning vacatur claim.  But the Arbitrator cannot be blamed for not considering evidence or arguments never presented.  As a result, Petitioners' claim must be rejected.

## IV.     THERE IS NO BASIS TO MODIFY THE AWARD

Section 11(b) of the FAA authorizes a court to "make an order modifying or correcting" an arbital award "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted."  9 U.S.C. § 11(b).  Adult Use and Zola argue in the alternative that the Court should modify the Partial Final Award, and "remand the matter back to the arbitrator with instructions to allow discovery and adjudicate all matters—after a hearing—in a complete final award coextensive with all issues submitted by the parties." Pet. Br. ¶ 63.  But this argument rests on the same grounds as the request for vacatur: "the Arbitrator plainly awarded upon a matter not properly submitted to him." Pet. Br. ¶ 63.  Accordingly, for the same reasons that Adult Use and Zola have provided no grounds for vactur of the arbitration award, they have similarly failed to provide any legal reason to modify that award.  *See Matter of Arb. Between Ne. Marine Iron Works & B.S.L.*

14

*Cruises, Inc.*, No. 92-cv-5684, 1992 WL 349841, at *2 (S.D.N.Y. Nov. 10, 1992) ("[T]o the extent that the relief sought by respondent comes within the categories of modification or correction, it must be denied for the same reasons as the motion to vacate is denied.").

### V.     THE ARBITRATION AWARD IS CONFIRMED

Section 9 of the FAA commands that "a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (quoting 9 U.S.C. § 9).  Having denied the petition to vacate or modify the arbitration award, the Court must now confirm that award.

### CONCLUSION

For the reasons discuss above, the petition to vacate or modify the arbitration award is DENIED, and the cross-petition to confirm that award is GRANTED.

The Clerk of Court is respectfully requested to close the Motion at ECF No. 7.

**SO ORDERED.**

Date:  September 28, 2022        *[signature: Mary Kay Vyskocil]*
New York, NY                         **MARY KAY VYSKOCIL**
                                     **United States District Judge**